1   Mark Mahon

2   Mariners Rest,

3   Mariners View Avenue,

    Passage West,

4   Cork,

    Ireland

5   Tel: + 353 87 742 4444

6   Email: movieman1000@live.com

7

8   *Pro Se*

9                   **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11

12  Mark Mahon, an individual,              Case No. C 20 01525

13                  Plaintiff,              SK

14          v.                              **COMPLAINT FOR:**

15  YouTube LLC.; Google LLC, D/B/A         **1. Copyright Infringement;**
    YouTube.; and DOES 1 - 12,
16                                          **2. Infringement of Right of the Author;**

17                  Defendants.             **DEMAND FOR JURY TRIAL**

18                                          **Exhibits 1 - 44** (p. 22 – 198.)

19

20

21

22

23

24

25

26

27

28

                                1
                            COMPLAINT

Plaintiff, Mark Mahon, alleges as follows:

## JURISDICTION

1.     This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, *et seq.*

2.     The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     This Court also has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 under diversity of citizenship and pursuant to 28 U.S.C. § 1350 for a violation of the 'Berne Convention for the Protection of Literary and Artistic Works' in accordance with the "Berne Convention Implementation Act of 1988".

## VENUE

4.     This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, and acts of infringement complained of herein occurred in the State of California.

5.     Venue in this district is proper pursuant to 28 U.S.C § 1391 in that Defendants reside in this judicial district or have substantial ties to this district. Defendants are also subject to the court's jurisdiction with respect to this civil action under 28 U.S.C. § 1400 in that civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant resides or may be found.

## THE PARTIES

6.     Plaintiff, Mark Mahon, ("Plaintiff") is an Irish Film and Television Academy award nominated writer, producer and director based in Cork, Ireland, whose work and books have been featured and sold throughout the world.

7.     Defendant YouTube LLC. ("Defendant" or "YouTube") is, on information and belief, an American video-sharing platform headquartered in San Bruno, California. YouTube allows users to upload, view and share videos. It offers a wide variety of user-generated and

1  corporate media videos. Available content includes video clips, TV show clips, music videos,

2  short and documentary films, movie trailers, live streams, and other content such as video

3  blogging, short original videos, and educational videos. Most content on YouTube is uploaded by

4  individuals. The vast majority of its videos are free to view, but there are exceptions, including

5  subscription-based premium channels, film rentals, as well as YouTube Music and YouTube

6  Premium.

7      8.      Defendant Google LLC, D/B/A YouTube ("Defendant" or "Google") is, on

8  information and belief, the owner of YouTube as Google bought the site in November 2006 for

9  U.S.$1.65 billion according to public record. YouTube now operates as one of Google's

10  subsidiaries. Google is an American multinational technology company that specializes in

11  internet-related services and products, which include online advertising technologies, search

12  engine, cloud computing, software, and hardware. It is considered one of the Big Four technology

13  companies, alongside Amazon, Apple, and Facebook.

14      9.      The true names and capacities of the defendants named herein as DOES 1 through

15  12, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore

16  sues said defendants by said fictitious names. Plaintiff is informed and believes, an thereon

17  alleges, that each of the defendants designated herein as DOE is legally responsible for the events

18  and happenings hereinafter alleged and legally caused injury and damages proximately thereby to

19  Plaintiff as alleged herein. Plaintiff will seek leave to amend the Complaint when the true names

20  and capacities of said DOE defendants have been ascertained. YouTube LLC., Google LLC,

21  D/B/A YouTube and DOES 1 through 12 are hereinafter collectively referred to as "Defendants."

22      10.     Plaintiff is informed, believes and has proof, and on that basis avers, that each of

23  the Defendants participated in or benefitted from and is in some manner responsible for the acts

24  described in this Complaint and any damages resulting therefrom.

25      11.     Plaintiff is informed, believes and has proof, and on that basis avers, that each of

26  the Defendants and DOES 1 - 12 has acted in concert and participation with each other

27  concerning the claims in this Complaint.

28      12.     Plaintiff is informed and believes, and on that basis alleges, that each of the

1  Defendants and DOES 1 - 12 was empowered to act as the agent, servant and/or employees of

2  each other, and that all the acts alleged to have been done by each of them were authorized,

3  approved and/or ratified by each of them.

4

5                    **BACKGROUND AND FACTUAL ALLEGATIONS**

6        13.     At all times relevant hereto, Plaintiff has been and still is the holder of the

7  Exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments

   thereto) (the "Copyright Act") to reproduce, copy, publicly perform, distribute, sell, display, or
8
   license the reproduction, to make or reproduce derivative works, and/or display of his award-
9
   winning motion picture, trailer and award-winning cover listed as Exhibit ("*Exh.*") (*Exh.* 1, p. 23)
10
   attached hereto, which is the subject of this action (referred to herein as "STRENGTH AND
11
   HONOUR") throughout the world.
12
         14.     Plaintiff is an entrepreneur who has used his experience, talent, and creativity
13
   developed over years of hard work to pursue his goal of making motion pictures. Plaintiff, Mark
14
   Mahon authored, wrote, produced, directed and financed his award-winning motion picture,
15
   'STRENGTH AND HONOUR' (the "Motion Picture") starring Michael Madsen, Vinnie Jones
16
   and Richard Chamberlain, by depleting his life savings and personally borrowing money from his
17
   family and close friends. (*Exh.* 2, p. 25 - 26.)
18
         15.     The Motion Picture follows the struggle of a single father who has to break his
19
   dying wife's last wish to never box again in order to save his young son's life; Plaintiff spent over
20
   two years travelling around the world on the international film festival circuit with his main actors
21
   to create a branding for the Motion Picture. (*Exh.* 3, p. 28 - 43.) It received two Irish Film and
22
   Television Academy award nominations, was nominated for over thirty (32) awards around the
23
   globe and won over twenty (20) awards in film festivals all over the world. (*Exh.* 1, p. 23.)
24
   Plaintiff's success created such strong word of mouth about the Motion Picture at the end of the
25
   film festival campaigning, Plaintiff was hosted to a Royal screening by His Serene Highness,
26
   Prince Albert, Sovereign Prince of Monaco at the Palace of Monaco (*Exh.* 4, p. 45 - 47), and
27
   Plaintiff, Mark Mahon and the Motion Picture's leading actor, Michael Madsen, were invited on
28

1  the TODAY show in New York to talk about 'STRENGTH AND HONOUR' by Meredith Vieira.

2  (*Exh*. 5, p. 49 - 50.)

3       16.     Plaintiff is the registered author and Copyright owner of the screenplay having

4  registration no.TXul-289-556 at the United States Copyright Office (*Exh*. 6, p. 52) and the

5  registered author, writer, producer, feature director and owner of the exclusive rights of the

6  Motion Picture's Copyright having registration no. PA 1-398-376 at the U.S. Copyright Office.

7  (*Exh*. 2, p. 25 - 26.)

8       17.     Plaintiff assigned his rights in trust to 'Maron Pictures Ltd., t/a Maron

9  Pictures Limited Liability Company and Maron Pictures' ("Maron Pictures") under an

10  'Agreement to Acquire Literary Material' (*Exh*. 7, p. 54 - 68) and 'Agreement to Acquire

11  Authorship Rights' on September 25th, 2006. (*Exh*. 8, p. 70 - 80.) Both agreements, in

12  combination with each other, were to pay Plaintiff €300,000.00 (Three Hundred Thousand Euro)

13  no later than the 30th day of September, 2015, in order for his grant of rights to become

14  permanently assigned. In the event of non-payment, Plaintiff had the right to ***revoke all rights***

15  granted to Maron Pictures. (*Exh*. 7., p. 59 - 60 ; *Exh*. 8., p. 73 - 74 ; *Exh*. 9., p. 82 - 83.)

16       18.     Further, Plaintiff  ***never*** "waive[d] his benefit of any provision of law known as the

17  "droit moral" or moral rights or any similar law in any country of the world" (*Exh*. 8, p. 73) and

18  the only award-winning display cover/poster that was ever authorized by Plaintiff contains the

19  Motion Picture's leading actor, Michael Madsen, in the main body of the poster, displayed awards

20  won from film festivals around the world, listed two Irish Film and Television Academy award

21  nominations and two quotes branding the Motion Picture as the award-winning motion picture it

22  is. (*Exh*. 1, p. 23.)

23       19.     In or around April 2009, Maron Pictures then ***only*** assigned "the sole and

24  exclusive right, license and privilege to license to distribute" under a 'Grant of Rights' or the

25  distribution right pursuant to 17 U.S.C. § 106(3) to Mainsail LLC ("Mainsail") for "the entire

26  world, excluding North America and Ireland" in accordance with 17 U.S.C. § 201(d). Mainsail

27  also does business under the banner of Shoreline Entertainment, Inc. However, Maron Pictures

28  never transferred its rights pursuant to 17 U.S.C. §§ 106 (1), 106 (2), 106(4), 106(5), 106(6) and

1  106A(a) to any individual, corporate, associate or otherwise. Further, 17 U.S.C. § 201(d)

2  TRANSFER OF OWNERSHIP states "(1) The ownership of a copyright may be transferred in

3  whole or in part by any means of conveyance or operation of law" and "(2) Any of the exclusive

4  rights comprised in a copyright, including any subdivision of any rights specified by section 106,

5  may be transferred as provided by clause (1) and owned separately. ***The owner of any particular***

6  ***exclusive right is entitled, to the extent of that right, to all of the protection and remedies***

7  ***accorded to the copyright owner by this title***." (emphasis added.) Plaintiff at the outset sent

8  Mainsail the key Art PSD file for the only authorized award-winning cover/poster to be displayed

9  publicly and 27 high resolution photographs as requested by them. (*Exh.* 10, p. 85 - 86.) Then, as

10  part of the Mainsail agreement, ***Maron Pictures sent all the master elements for the Motion***

11  ***Picture 'STRENGTH AND HONOUR' to Visual Data in Burbank, California*** (*Exh.* 11, p. 88 -

12  92) including the only authorized trailer to be displayed publicly, as an award-winning motion

13  picture. (*Exh.* 12, p. 94.)

14          20.     In or around January 2010, the Motion Picture was commercially released in

15  Ireland (*Exh.* 13, p. 96) and Europe with illicit covers and trailer, and not the cover or trailer

16  Plaintiff had provided to Mainsail in violation of his rights, 17 U.S.C. §§ 106(1), 106(2), 106(3),

17  106(5) , 106A(a) and 501. (*Exh.* 14, p. 98.) Plaintiff instructed Mainsail to "cease and desist"

18  from distributing 'STRENGTH AND HONOUR' and wanted all product removed from "any

19  place where the product's images or trailers [wa]s listed for sale". (*Exh.* 15, p. 100.) In a follow-

20  up email, Plaintiff instructed Mainsail that they "are in breach of [their] contract and the

21  contracts in place with [Plaintiff] and Michael Madsen [Motion Picture's leading actor]. Remove

22  all product until the matter is resolved, as failure to do so will result in [Plaintiff] seeking

23  substantial damages and costs from [Mainsail] and E1." (*Exh.* 16, p. 103.) Tom Jarvis of

24  Entertainment One ("eOne") was also cc'ed during this correspondence. Mainsail was also

25  provided the entire cast and crew contracts in relation to the Motion Picture as part of their

26  delivery. (*Exh.* 17, p. 105.)

27          21.     On February 9, 2010, Maron Pictures contacted Entertainment One directly as its

28  "cease and desist" instructions to Mainsail were ignored and spoke to Poonam Sahota,

1  Acquisitions Manager. It explained that the marketing and artwork was a clear violation of

2  Plaintiff's contract, the Motion Picture's leading actor, Michael Madsen's contract and asked

3  eOne to "cease and desist" with their release in Ireland and scheduled release in the United

4  Kingdom for February 22, 2010. Later that day, Poonam Sahota emailed Maron Pictures and

5  implied in her email that Maron Pictures was happy for them to proceed with the marketing and

6  artwork. (*Exh*. 18, p. 107.)

7          22.     On February 12, 2010, Maron Pictures emailed Poonam Sahota of Entertainment

8  One and again relayed that it was "not happy about proceeding with the current marketing and

9  artwork." It further reiterated that it is "a clear breach of Mr. Madsen's and [Plaintiff's] contract".

10  (*Exh*. 19, p. 110 - 111.) Less than an hour later, Plaintiff emailed Entertainment One again and

11  stated "[Maron Pictures] would like to make it very clear, [Maron Pictures] never agreed on the

12  phone that [Maron Pictures] would allow initial stock to go out". Plaintiff continued, "[y]ou

13  suggested that it should go out and that we could change it on the next print run but [Plaintiff]

14  never agreed to it." (*Exh*. 20, p. 114.)

15          23.     Later the same day, Poonam Sahota of Entertainment One emailed Maron Pictures

16  and stated that she "copied Sam [Eigen] who represents Mainsail, LLC, [eOne's] contractual

17  licensor." She further stated that "contractually our release as is, is above par and the contract

18  which we entered into with Mainsail authorizes us to go ahead with the release." She further

19  confirmed that "Sam [Eigen] has informed us further that the actor agreement with Michael

20  Madsen [leading actor] indicates that Michael Madsen is to receive second position billing." Of

21  course, this information that she relayed was factually incorrect, as Michael Madsen is the leading

22  actor of the Motion Picture and was to receive first position billing. It also should be noted that

23  not only did Mr. Madsen not receive his contractual first billing, but he did not even appear on the

24  cover. (*Exh*. 14, p. 98.) In response to Poonam Sahota, Maron Pictures pointed out there are "lots

25  of inaccuracies in [her] email on [Mainsail's] behalf, even [Mainsail's] quote about having all

26  control over the manner that it shall be sold and marketed," which referred to how it would be

27  marketed and sold to industry buyers as 1. Mainsail were never assigned Plaintiff's moral rights

28  by Maron Pictures under its 'Grant of Rights' which is very precise about the Rights that were

7
COMPLAINT

1   only assigned pursuant to 17 U.S.C. § 201(d), and 2. Plaintiff as the Author of the Motion Picture

2   did "not waive his benefits of any provision of law known as the "droit moral" or moral rights or

3   any similar law in any country of the world" to begin with, so it was not possible for Maron

4   Pictures to assign Rights it never had control of, nor were ever assigned. (*Exh*. 8, p. 73.) Maron

5   Pictures further made it clear that eOne were told a "bare face lie in relation to Mr. Madsen's

6   contact" by Mainsail. Maron Pictures again asked for an opportunity to speak to her directly, and

7   assured her that "[i]f [Maron Pictures] can come to a meeting of minds with E1, then [Maron

8   Pictures] will do this, which is why [Maron Pictures] would [like] a brief opportunity to speak to

9   you." (*Exh*. 21, p. 116.)

10        24.     On February 14, 2010, with no response forthcoming from Entertainment One to

11   its request, Maron Pictures again asked Poonam Sahota of Entertainment One in a single line

12   email, "[c]an we schedule a call for maybe sometime tomorrow?" Ms. Sahota of Entertainment

13   One replied later that day stating "I met with Sam at Shoreline today and I think the best and

14   simplistic approach for us all is for our communications to go through them." (*Exh*. 22, p. 119.)

15        25.     On February 19, 2010, Plaintiff emailed Poonam Sahota of Entertainment One and

16   was looking to have five questions answered in relation to his copyright protected Motion Picture

17   (*Exh*. 23, p. 122), which was read but completely ignored. (*Exh*. 24, p. 125.)

18        26.     Throughout 2010, Maron Pictures also made various requests for information from

19   Visual Data in Burbank, California but its requests were refused due to Visual Data's contractual

20   arrangements with Mainsail. However, Maron Pictures were provided a 'master's report' as a

21   professional courtesy of all the master elements for the Motion Picture and award-winning trailer

22   that Maron Pictures had supplied to Visual Data on October 15, 2010. (*Exh*. 12, p. 94 ; *Exh*. 25, p.

23   127 – 130.)

24        27.     On December 17, 2010, Maron Pictures again contacted Entertainment One and

25   outlined that there is "a major dispute with Shoreline Entertainment." Maron Pictures further

26   reiterated that Entertainment One "are aware of some of [the] complaints since the beginning of

27   the year, including the unauthorized covers and trailer which violates [Plaintiff's] contracts,

28   amongst other things." Maron Pictures also relayed that it "wanted to make [Entertainment One]

1   aware of the current situation, as a professional courtesy, since [Maron Pictures] have had no

2   accountability in any manner from [Mainsail/Shoreline Entertainment]." (*Exh.* 26, p. 132.) Again,

3   the email was read but was completely ignored. (*Exh.* 27, p. 135.)

4        28.   Since 2010, the Motion Picture was licensed for use and commercially released in

5   over 41 countries, namely 1. Bahrain 2. Egypt 3. Iran 4. Iraq 5. Jordan 6. Kuwait 7. Lebanon 8.

6   Oman 9. Palestinian Territories 10. Qatar 11. Saudi Arabia 12. Syria 13. United Arab Emirates

7   14. Republic of Yemen 15. Algeria 16. Morocco 17. Tunisia 18. Libya 19. Mauritania 20. Sudan

8   21. Somalia 22. Malta 23. Ireland 24. United Kingdom 25. Romania 26. Thailand 27. Vietnam 28.

9   Australia 29. New Zealand 30. Russia 31. Turkey 32. Indonesia 33. Malaysia 34. Brunei 35.

10   Greece 36. Cyprus 37. Sweden 38. Denmark 39. Norway 40. Finland and 41. Iceland. It turned

11   millions of dollars globally and enjoyed success all over the world. However, Plaintiff was not

12   paid his consideration in accordance with his 'Agreement to Acquire Literary Material' and his

13   'Agreement to Acquire Authorship Rights' because Maron Pictures was never paid one brown

14   cent or received a single royalty report from Mainsail LLC. Accordingly, on the *1ˢᵗ day of*

15   ***October, 2015, Plaintiff sent a formal 'Notice of Contract Revocation' to Maron Pictures***

16   ***revoking all rights*** he had assigned to it as per clauses 5 and 4 of his Agreement, respectively.

17   (*Exh.* 7., p. 59 - 60 ; *Exh.* 8., p. 73 - 74 ; *Exh.* 9., p. 82 - 83.) Further, under the 'Assignment'

18   clauses 14 and 11 of his Agreement, respectively, it states "Purchaser may assign and transfer this

19   agreement or all or any part of its rights hereunder to any person, firm or corporation without

20   limitation, and ***this Agreement shall be binding upon*** and inure to the benefit of ***the parties***

21   ***hereto and their successors, representatives and assigns*** forever." (emphasis added.) (*Exh.* 7, p.

22   65 ; *Exh.* 8, p. 78.)

23        29.   At a court hearing pursued by Maron Pictures in State court during June 2016, the

24   court found that Mainsail LLC "stopped all licensing activities when it received a "cease and

25   desist" letter from Maron Pictures on January [30], 2010." (*Exh.* 15, p. 100.) Mainsail (who had

26   no rights relating to the Motion Picture other than those arising out of their agreement) also

27   testified that Maron Pictures never delivered the Motion Picture to them, which Maron Pictures

28   still disputes as (1) it was just not possible for Mainsail to get the masters or individual elements

1   for 'STRENGTH AND HONOUR' from anywhere else in the world, and (2) any derivative that

2   was unlawfully created could only be produced from the master elements that were provided by

3   Maron Pictures.

4       30.      On December 1, 2016, Plaintiff met with a copyright solicitor on a personal basis,

5   Mark Stafford, partner of Lee & Thompson LLP in London, who had also been sent the 'Notice

6   of Contract Revocation' that Plaintiff had sent Maron Pictures on October 1, 2015, and sought

7   legal advice in relation to same. (*Exh*. 28, p. 138 - 140.)

8       31.      On December 9, 2016, the court then granted Judgment in favor of Mainsail LLC,

9   Shoreline Entertainment, Inc., Sam Eigen and decreed that Maron Pictures would take nothing by

10   way of its complaint. (*Exh*. 30, p. 144 - 145.) In other words, the court ruled that the contract was

11   ***not*** enforceable and thus, Maron Pictures was not entitled to an accounting. However, since

12   Maron Pictures never delivered the Motion Picture as claimed by Defendants, i.e. Plaintiff's

13   personal property, Defendants had no legal right to use Plaintiff's property and had used it

14   without Maron Pictures consent before October 1, 2015 and used it without Plaintiff's consent

15   under the continuing violation doctrine.

16       32.      Meanwhile, Plaintiff's Motion Picture still continued to be performed around the

17   world in 2016 contrary to Mainsail's testimony and "a "cease and desist" letter from Maron

18   Pictures on January [30], 2010", which was purportedly acted upon by Mainsail in 2010.

19   However, the Motion Picture was still being exploited in Ireland, the U.K. and Europe by

20   Defendants in violation of Plaintiff's copyright 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4),

21   106(5), 106(6), 501 and his moral rights contrary to 17 U.S.C §§ 106A(a), 501. (*Exh*. 29, p. 142.)

22   Plaintiff also made a commercial purchase from YouTube himself in 2016. (*Exh*. 31, p. 147 -

23   152.) Further, Defendants were still violating Plaintiff's copyright and his moral rights in 2019

24   (*Exh*. 32, p. 154 – 155) as is evidenced by a commercial purchase of same. (*Exh*. 33, p. 157 -

25   159.)

26       33.      In or around early ***December 2019, Plaintiff only got evidence for the first time***

27   ***via an official confirmation from Visual Data that his copyright protected Motion Picture***

28   ***masters had been unlawfully copied in the State of California at Visual Data contrary to 17***

1  *U.S.C. §§ 106 (1), 106 (2), 106 (5), 106A(a), 501 without his consent* (*Exh*. 34, p. 161 – 162 ;

2  *Exh*. 35, p. 164) and those illicit copies were acquired by numerous companies around the world,

3  including Defendants, who have been commercially exploiting Plaintiff's copyright protected

4  Motion Picture under the continuing violation doctrine. (*Exh*. 36, p. 166 - 167.) However, since

5  these illicit copies were created in the State of California, then extraterritoriality copyright

6  infringement applies to every copy that stemmed from them, as the copyrighted Motion Picture

7  masters were 'records' from which the work could be 'reproduced', and it is a tort to make them

8  in the United States. Previous circuit court rulings have also found that the copyright holder may

9  recover damages that stem out of the country from a direct infringement of its exclusive rights

10  that occurs within the United States. (*Exh*. 2, p. 25 - 26.)

11      34.    In or around December 12, 2019, Plaintiff then wrote to Defendants and informed

12  them that they had infringed his Copyright and that he is entitled to recover his actual damages

13  pursuant to Federal Copyright Law (17 U.S.C. § 504), which he required payment of. (*Exh*. 37, p.

14  169 - 181.) Plaintiff also attached a certified copy of his Certificate of Registration from the

15  United States Copyright Office, PA 1-398-376, certified by Comyn, Kelleher, Tobin Solicitors

16  and a letter from his Chartered Accountants and Registered Auditors, Moore, confirming his

17  actual costs/damages of $8,753,310. (*Exh*. 38, p. 183.)

18      35.    On January 2, 2020, YouTube Legal Support Team wrote to Plaintiff via email

19  stating "[i]f you believe you hold the copyright to the content in question, you may wish to file a

20  copyright complaint." (*Exh*. 39, p. 185.) However, the link could not be accessed.

21      36.    On January 8th, 2020, Simon Osborn, Head of Legal and Business Affairs for

22  Entertainment One wrote to Plaintiff and stated that "Entertainment One were granted all linear

23  distribution rights, which included 'all means of download and streaming', in this film by way of

24  an agreement with Mainsail LLC". He also confirmed that they authorized giving it to "Google

25  and other digital platforms" and sought assurances that "no further action will be taken against

26  these platforms". (*Exh*. 40, p. 187.)

27      37.    On January 10th, 2020, Plaintiff wrote to Mr. Osborn and attached the

28  'Entertainment One Demand Letter', which was issued to Entertainment One Ltd. via their Santa

COMPLAINT

1    Monica, California office, dated December 12th, 2019. Plaintiff also confirmed that copyright

2    infringements lawsuits were being drafted against several companies including Entertainment

3    One US LP for infringing his copyright. (*Exh*. 41, p. 189 - 191.)

4         38.    On January 24, 2020, Plaintiff tried to access the link that the YouTube Legal

5    Support Team had provided him again, but it still could not be accessed. (*Exh*. 42, p. 193.)

6    Plaintiff then wrote back to the YouTube Legal Support Team and noted that he had not heard

7    back from them about his formal demand and asked for a direct contact in the YouTube legal

8    team, as he still needed to be compensated for YouTube violating his copyright. (*Exh*. 43, p. 195.)

9         39.    On January 26, 2020, YouTube Legal Support Team wrote back to Plaintiff with

10   the exact same response that they had sent him via email on January 2, 2020. (*Exh*. 44, p. 197 – p.

11   198.)

12                              **FIRST CLAIM FOR RELIEF**

13                        **Copyright Infringement – 17 U.S.C. § 106, *et seq*.**

14                        **(Direct, Contributory Against All Defendants)**

15        40.    Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 39 as

16   though fully set forth herein.

17        41.    Plaintiff, Mark Mahon, is the sole owner of the copyright in an original work that

18   is fixed in a tangible media of expression. Effective on March 8, 2006, the United States

19   Copyright Office issued a copyright registration certificate for the original screenplay,

20   STRENGTH AND HONOR to Plaintiff. It was assigned number TXul-289-556 by the Copyright

21   Office. Effective on August 6, 2009, the United States Copyright Office issued a copyright

22   registration certificate for his Motion Picture, STRENGTH AND HONOUR, having registration

23   number PA 1-642-297. Effective on May 3, 2017, the United States Copyright Office issued a

24   supplementary copyright registration certificate for his motion picture, STRENGTH AND

25   HONOUR, to reflect that Plaintiff, Mark Mahon, is the registered author, writer, producer, feature

26   director and owner of exclusive rights of the Copyright having registration number PA 1-398-376

27   at the U.S. Copyright Office.

28        42.    Upon information, belief, and proof of use, Defendants have produced,

reproduced, distributed, sold for profit and publicly performed Plaintiff's copyright protected work and reproduced derivatives of Plaintiff's protected work that stemmed from the State of California in violation of his exclusive rights, including the individual images of the Motion Picture. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, distribute copies of his work for their own profit, to make or reproduce  derivative works, sell the copyrighted work without Plaintiff's consent and to publicly display an illicit cover and trailer of his Motion Picture.

43.     Defendants' infringement has been undertaken with intent to financially gain from Plaintiff's protected copyrighted work. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement, and they did so with intent to further their own financial interests with the infringement of Plaintiff, Mark Mahon's rights as author, writer, producer, feature director and owner of exclusive rights of his Motion Picture, 'STRENGTH AND HONOUR'. Accordingly, Defendants have directly and contributorily infringed Plaintiff's copyrighted work.

44.     The above-described conduct by Defendants constitutes copyright infringement under the Copyright Act.

45.     As a result of the above-described conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial and Plaintiff is entitled to his actual damages. Plaintiff respectfully submits his actual damages are $8,753,310 for his copyright infringed by Defendants.

46.     Plaintiff is also entitled to recover from Defendants his costs and attorneys' fees per copyright infringed for Defendants' copyright infringement.

## SECOND CLAIM FOR RELIEF

### Infringement of Right of the Author – 17 U.S.C. § 106A(a).

### (Direct, Contributory Against All Defendants)

47.     Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 46 as though fully set forth herein.

13

48.     Upon information, belief, proof of use, Defendants have produced, reproduced, distributed, sold for profit and publicly displayed Plaintiff's copyright protected work with unauthorized derivatives that stemmed from the State of California in violation of Plaintiff's moral rights. Defendants' acts violate Plaintiff's rights to attribution and integrity as author of the Motion Picture under the Copyright Act, 17 U.S.C. §§ 106A(a) and 501, which include Plaintiff's exclusive rights "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation," and/or Plaintiff's exclusive rights that "prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right."

49.     Defendants' infringement of Plaintiff's right of the author has been undertaken with intent to financially gain from Plaintiff's protected copyrighted work. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent this infringement, and they did so with intent to further their own financial interests with the infringement of Plaintiff's moral rights as author of his award-winning Motion Picture, 'STRENGTH AND HONOUR'. Plaintiff never assigned his moral rights or right of the author to any individual, corporate, associate or otherwise in any country of the world. Accordingly, Defendants have directly and contributorily infringed the exclusive rights of the author, i.e., Plaintiff, Mark Mahon.

50.     The above-described conduct by Defendants constitutes copyright infringement under the Copyright Act.

51.     As a result of the above-described infringing conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial and Plaintiff is entitled to his actual damages. Plaintiff submits that he has been damaged in an amount of $8,753,310 which are the copyright owner's actual damages for his copyright infringed by Defendants' copyright infringement.

52.     Plaintiff is also entitled to recover from Defendants his costs and attorneys' fees per copyright infringed for Defendants' copyright infringement.

53.     Defendants' infringement for the second claim for relief has caused irreparable harm to Plaintiff, Mark Mahon, for which he has no adequate remedy at law. Unless this Court

14

restrains Defendants from infringing Plaintiff's protected work and moral rights, the harm will continue to occur in the future. Accordingly, Plaintiff is entitled to preliminary and permanent injunction.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

54.    For an Order that Defendants be required to pay over Plaintiff the actual damages suffered by Plaintiff as a result of the infringement of Plaintiff's copyright, exclusive rights and/or moral rights under infringement of right of the author and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of the Copyright Act, as set forth in 17 U.S.C. § 504;

55.    For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

56.    For an award of attorneys' fees pursuant to 17 U.S.C. § 505 as Plaintiff will engage the services of counsel once the matter proceeds to trial.

57.    For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

58.    For such other and further relief as the Court deems just and proper.

Dated: February 27, 2020                    Respectfully submitted,


By: _____
    Mark Mahon
    Mariners Rest,
    Mariners View Avenue,
    Passage West,
    Cork,
    Ireland
    Tel: + 353 87 742 4444
    Email: movieman1000@live.com

    *Pro Se*

1

## **DEMAND FOR JURY TRIAL**

2

    Plaintiff Mark Mahon hereby demands a trial by jury pursuant to Federal Rule of Civil

3

Procedure 38 on all issues so triable.

4

5

Dated: February 27, 2020                       Respectfully submitted,

6

7

By: _____

8

                             Mark Mahon

9

                             Mariners Rest,

10

                             Mariners View Avenue,

11

                             Passage West,

12

                             Cork,

13

                             Ireland

14

                             Tel: + 353 87 742 4444

                             Email: movieman1000@live.com

                             *Pro Se*

16