1  Mark Mahon
2  movieman1000@live.com
   Mariners Rest,
3  Mariners View Avenue,
   Passage West,
4  Cork,
   Ireland
5  Telephone: 353 87 742 4444

6  *Plaintiff Pro Se*

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11

12  MARK MAHON, AN INDIVIDUAL,              CASE NO.  4:20-cv-01525-YGR

13              Plaintiff,                  **OPPOSITION TO DEFENDANTS'
                                            MOTION TO DISMISS AMENDED
14       v.                                 COMPLAINT UNDER
                                            FED.R.CIV.P.12(B)(6); DECLARATION OF**
15  YOUTUBE LLC.; GOOGLE LLC, D/B/A         **MARK MAHON; EXHIBITS 1- 8**
    YOUTUBE.; and DOES 1 - 12,
16
                Defendants.
17
                                            JUDGE: HON. YVONNE GONZALEZ ROGERS
18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION……………………………………………………………… 2

    A.  Preliminary Comments…………………………………………………… 2

II.  LEGAL STANDARD………………………………………………………... 3

III. LEGAL ARGUMENT……………………………………………………….. 3

    1.   The Copyright Infringement Claim (First Claim for Relief) Must
        Not Be Dismissed…………………………………………………… 3

      A.  Plaintiff Owns The Copyright and is the Only Legal Owner in the World……... 5

      B.  Defendants' Motion which seeks to have Plaintiff's Claim Dismissed for
          Failure to State a Claim but acknowledge at least seven (7) allegations while
          ignoring other critical facts………………………………….………... 7

    2.   The Infringement of Author's Rights Claim (Second Claim for Relief) Must
        Not Be Dismissed…………………………………………………… 13

IV. CONCLUSION………………………………………………………… 19

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

**Cases**

3

4

*Apple Computer v. Franklin Computer Corp.*,
   714 F.2d 1240, 1253 (3d Cir. 1983)…………………………………………………18

5

6

*A M Records v. Napster, Inc.*,
   239 F.3d 1004, 1013 (9th Cir. 2001)………………………………………….... 5

7

*Conley v. Gibson*,
   355 U.S. 41, 45-46 (1957)……………………………………………………… 3

8

9

*Disney Enters., Inc. v. VidAngel, Inc.*,
   224 F. Supp. 3d 957 (C.D. Cal. 2016)……………………………………………… 18

10

11

*Famous Music Corporation v. Seeco Records, Inc.*,
   201 F. Supp. 560, 568-69 (S.D.N.Y. 1961)……………………………………… 12

12

13

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246, 248 (9th Cir. 1997)…………………………………………………... 3

14

*Goldberg v. Cameron*,
   482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007)……………………………………… 3

15

16

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940, 946 (9th Cir. 2005)……………………………………………… 3

17

18

*Los Angeles News Ser. v. Reuters Television I*,
   149 F.3d 987 (9th Cir. 1998)………………………………………………... 13

19

20

*Microsoft Corp. v. Grey Computer*,
   910 F.Supp. 1077, 1084 (D.Md. 1995)…………………………………………... 14

21

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
   795 F.3d 997, 1002 (9th Cir. 2015)……………………………………………… 4

22

23

*M. Kramer Mfg. Co. v. Andrews*,
   783 F.2d 421, 432 (4th Cir. 1986) ……………………………………………… 14

24

25

*Orson, Inc. v. Miramax Film Corp.*,
   189 F.3d 377,  386 (3d Cir. 1999)…………………………………………………... 5

26

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146, 1159 (9th Cir. 2007)…………………………………………………... 3

27

28

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663, 671 (2014)……………………………………………………… 13

ii

# TABLE OF AUTHORITIES

**(continued)**

*Russell v. Price*,
   612 F.2d 1123, 1129 n. 17 (9th Cir. 1979)……………………………………….. 14

*Sheldon v. Metro-Goldwyn Pictures Corporation*,
   106 F.2d 45, 52 (2d Cir. 1939) aff'd, 309 U.S. 390 (1940)……………………… 12

*Stewart v. Abend*,
   495 U.S. 207, 251, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)…………………… 14

*Update Art, Inc. v. Modiin Publishing, Ltd.*,
   843 F.2d 67, 73 (2d Cir. 1988)………………………………………………….... 13

*Video Pipeline, Inc. v. Buena Vista Home Entert., Inc.*,
   192 F. Supp. 2d 321, 347 (D.N.J. 2002)…………………………………………... 18

*Warner Bros. Entm't, Inc. v. WTV Sys.*,
   824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011)……………………………………... 18

*Wheaton v. Peters*,
   33 U.S. (8 Pet.) 591, 663-64, 8 L.Ed. 1055 (1834)……………………………… 14

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658, 661, 663 (9th Cir. 1998)…………………………………………… 3


**Statutes and Rules**

17 U.S.C. § 101………………………………………………………………………..,,, 2

17 U.S.C. § 102……………………………………………….………………………… 15, 16

17 U.S.C. § 106…………………………………………………… 3, 4, 5, 6, 7, 9, 10, 11, 12, 15, 16

17 U.S.C. § 106A………………………………………………..… 2, 5, 7, 10, 16, 17, 18

17 U.S.C. § 107……………………………………………………………...…… 3, 15

17 U.S.C. § 122………………………………………………………………..... 3, 5, 15, 16

17 U.S.C. § 201……………………………………………………………………….. 4, 8

17 U.S.C. § 501…………………………………………………..…… 2, 4, 5, 7, 9, 10, 15

37 C.F.R. § 202.6(d)(2)…………………………………………………………………… 7

Berne Convention Implementation Act of 1988………………………...…..… 6, 14, 16, 17, 18

iii

1

### TABLE OF AUTHORITIES

2

**(continued)**

3

**Congress**

4

*Hearings, 100th Cong.*, supra note 4, at 479-546……………………………………………  15

5

6

**Treaty of the United States**

7

Berne Convention for the Protection of Literary and Artistic Works (1886)………. 14, 16, 17, 18

8

9

**Treatises**

10

3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p.  12-150.4 (2013)………………... 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## AMENDED COMPLAINT PURSUANT TO FED. R. CIV.P. 12(b)(6)

Pursuant to Civil Local Rules 7-3(a) in Civil Proceedings before the United States District Court for the Northern District of California allows for a party to file an opposition to a Motion. Plaintiff Mark Mahon ("Plaintiff") filed a complaint in the above-captioned action against Defendants YouTube LLC ("YouTube") and Defendant Google LLC, D/B/A YouTube ("Google")(collectively, "Defendants") on March 2, 2020. (ECF 1.) On March 24, 2020, Plaintiff filed an Amended Complaint (referred herein as "Doc.16") against Defendants. (ECF 16.) Defendants' motion which seeks an order dismissing Doc.16 on the grounds of failure to state a claim upon which relief can be granted but should be denied as Plaintiff's Amended Complaint clearly states his claims.

This motion is based on this Opposition, the Memorandum of Points and Authorities, the Declaration of Mark Mahon, and exhibits filed and served herewith, and upon the papers, records and pleadings on file herein.

Dated: April 29, 2020                    Respectfully submitted,


                                         By: _____
                                         Mark Mahon
                                         *Plaintiff Pro Se*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
CASE NO. 4:20-CV-01525-YGR

1

### **MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.   INTRODUCTION

3

Plaintiff respectfully submits that Defendants YouTube LLC ("YouTube") and Defendant

4

Google LLC, D/B/A YouTube ("Google")(collectively, "Defendants")  motion to dismiss for

5

failure to state a claim (referred herein as "Doc.29") be denied as their motion fails to meet the

6

legal standard.

7

### A.  Preliminary Comments

8

There are two Federal Questions in this litigation. First is for copyright infringement

9

under 17 U.S.C. §§ 101, *et seq*. Second is violation of author rights pursuant to 17 U.S.C.  §§

10

106A(a) and 501(a). This action involves an award-winning motion picture, Strength and Honour

11

(the "Motion Picture").While Defendants may suggest that "allegations of infringement are more

12

properly directly [sic] at third parties unconnected with [Defendants], and that [Plaintiff's]

13

attempt to include [Defendants] in his disputes with unnamed third parties is contrived, at best"

14

(Doc.29 at 4, 17-19) the simple fact remains that Defendants were also infringing Plaintiff's

15

copyright as evidenced by exhibits attached to Doc.16 which included proof of Defendants selling

16

his Motion Picture, proof of purchase of the Motion Picture, proof of receipts from said purchases

17

from Defendants and proof of payment. (Doc.16-5 at 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14.)

18

Further, Defendants also claim that Plaintiff "mistakenly filed this action against YouTube

19

LLC and "Google LLC doing business as YouTube." YouTube is not a d/b/a, but rather, Google's

20

wholly-owned subsidiary." (Doc.29 at 5, footnote 1, 21-22) However, on April 25, 2020, Plaintiff

21

went to the YouTube website under the 'contact us' section and YouTube is listed as Google

22

LLC, D/B/A YouTube.  (Exhibit 1 hereto.) See also Declaration of Mark Mahon ("Decl.Mahon")

23

¶ 5) attached hereto.

24

Furthermore, Plaintiff's amended complaint (Doc.16) is listed as "YouTube LLC.; Google

25

LLC, D/B/A YouTube.; and DOES 1 – 12" so if Defendants are not happy with how they are

26

addressed, perhaps, Defendants would like to advise the Court accordingly and Plaintiff will

27

gladly seek leave to amend his complaint in accordance with ¶ 9 of his amended complaint.

28

(Doc.16 at 3 ¶ 9, 14-21.)

- 2 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661, 663 (9th Cir. 1998).

Furthermore, "[a] complaint should not be dismissed `unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Goldberg v. Cameron,* 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007) (same).

## III.  LEGAL ARGUMENT

### *1.  The Copyright Infringement Claim (First Claim for Relief) Must Not Be Dismissed*

To establish a case of copyright infringement, Plaintiff "must satisfy two requirements to present a prima facie case of direct infringement: (1) [he or she] must show ownership of the allegedly infringed material and (2) [he or she] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1159 (9th Cir. 2007) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).

Section 106 provides, in pertinent part:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

- 3 -

1

2

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

3

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

4

5

6

7

8

9

10

11

12

"Under § 501(b) of the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The "exclusive rights" in a copyright are enumerated at § 106 of the Act. They are the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 795 F.3d 997, 1002 (9th Cir. 2015)

13

14

15

16

"Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to someone else. 17 U.S.C. § 201(d)(1)." Minden Pictures, Inc., 795 F.3d at 1002.

17

18

Moreover, each exclusive right is further divisible and "any subdivision of any right specified by section 106, may be transferred ... and owned separately." 17 U.S.C. § 201(d)(2).

19

Section 201(d) refers to exclusive rights and provides:

20

21

22

(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

23

24

25

(2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and ***owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.*** (emphasis added)

26

27

28

"The right to transfer or license copyrighted material for use by others under sections 106 and 201 et seq. of the Copyright Act has never encompassed a right to transfer the work at all times and at all places free and clear of all regulation; it has meant that the copyright owner has

- 4 -

the exclusive right to transfer the material for consideration to others." *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377,  386 (3d Cir. 1999

　　　For the avoidance of any doubt, Plaintiff has also attached all his copyright certificates that he was issued by the United States Copyright Office for this Motion Picture, including the one which was amended due to a legitimate filing error as it was the first time that Plaintiff had filed a motion picture certificate of copyright. (Exhibit 2, 3, 4 hereto; Decl.Mahon ¶ 8) attached hereto.

　　　17 U.S.C. § 501(a) provides for:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

　　　"To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *A M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)

　　　Plaintiff's complaint clearly states it claim for copyright infringement and easily establishes these facts.

### A.　Plaintiff Owns The Copyright and is the Only Legal Owner in the World

　　　Plaintiff assigned his rights in trust to Maron Pictures Ltd. ("MPL") under an 'Agreement to Acquire Literary Material' (Doc.16-3 at 2 - 16 ) and an 'Agreement to Acquire Authorship Rights' on September 25th, 2006. (Doc.16-3 at 18 - 28.) Plaintiff is also the sole, one hundred percent (100%) owner, beneficiary and one hundred percent (100%) shareholder of his company, MPL too. (Exhibit 5 hereto.)  However, in order for his rights to have been permanently assigned to MPL, Plaintiff was due to be paid  €300,000.00 (Three Hundred Thousand Euro) no later than the 30th day of September, 2015 and his rights were only held in trust until they were paid for. In

the event of non-payment, Plaintiff had the right to **revoke**[1] all rights granted to MPL.[2] (Doc.16-3 at 7, 8 ¶ ¶ 4, 5; Doc.16-3 at 21, 22 ¶¶ 3, 4.) However, MPL could not perform because it was never paid any royalties as the Motion Picture was being performed around the world and as a result, MPL could not pay Plaintiff. Accordingly, Plaintiff revoked all his rights due to nonpayment in October 1, 2015, which were never permanently assigned until they were paid for and notified MPL as his agreements required him to do in accordance with laws of Ireland. (Doc.16-3 at 7, 8 ¶ ¶ 4, 5; Doc.16-3 at 21, 22 ¶¶ 3, 4; Doc.16-3 at 30, 31.) Accordingly, under the Assignment section of his MPL agreements, the terms "shall be binding upon and inure to the benefit of the parties hereto and their successors, representatives and assigns forever." (Doc.16-3 at 13 ¶14; Doc.16-3 at 26 ¶ 11.) Further, the illicit and unauthorized covers which Defendants were using, Plaintiff through his company, MPL, had instructed for them to be 'cease[d] and desist[ed]' with back in 2010 and has sought the same since. (Doc.16-4 at 14, 17.)

Furthermore, Plaintiff never "waive[d] his benefit of any provision of law known as the "droit moral" or moral rights or any similar law in any country of the world". (Doc.16-3 at 21 ¶ 2.) (Doc.16-3 at 30, 31.) So, illicit covers which Plaintiff repeatedly asked to be removed were not only a violation of Plaintiff's copyright pursuant to 17 U.S.C. §§ 106(5), 106(A)(a), the Berne Convention Implementation Act of 1988 and Berne Convention for the Protection of Literary and Artistic Works (1886), which is the United States is a signatory of, but these rights were never assigned to any individual, party, corporate, associate, entity or otherwise ever, so are not subject to any agreement.

This court should also note that when Plaintiff produced his United States Copyright "Certificate of Registration" at a State trial, which MPL had taken against Mainsail LLC ("Mainsail") in June 30, 2016, Mainsail argued then that the Copyright certificate could not be legally valid because "Maron Pictures" could not have been the Author, or the Director, or physically write the Screenplay. Accordingly, Plaintiff corrected the filing error he had made after

---

[1] dictionary.law.com; revoke – to annul or cancel an act, particularly a statement, document or promise, as if it no longer existed. Thus, a person can revoke a will or revoke an offer to enter into a contract, and a government agency can revoke a license.
[2] MPL is organized under the laws of Ireland.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
CASE NO. 4:20-CV-01525-YGR

1    this. Moreover, the Court of Appeal in that action were also made aware that Plaintiff is the

2    owner, as Plaintiff provided letters from his Accountants and his Lawyers reflecting that he is the

3    "sole owner of the Copyrighted motion picture". (Exhibit 5, 6 hereto.)

4         Further, the Copyright Certificate of Registration which was made effective on May 3,

5    2017, only corrected the basic registration information which was filed incorrectly on July 28,

6    2009. (Decl.Mahon ¶ 8.) Moreover, 37 C.F.R. § 202.6(d)(2) allows for this and provides "A

7    **correction** is appropriate if information in the basic registration was incorrect at the time that

8    basic registration was made."

9         In or around early December, 2019, Plaintiff only got evidence for the first time via an

10   official confirmation from Visual Data that his copyright protected Motion Picture masters had

11   been unlawfully copied in the State of California at Visual Data contrary to 17 U.S.C. §§ 106(1),

12   106(2), 106(5), 106A(a), 501 [and] without [Plaintiff's] consent. (Doc.16-5 at 16, 17, 19, 21, 22.)

13   Furthermore, Plaintiff received an email only on April 8, 2020 from Visual Data Media Services

14   confirming that Mainsail / Shoreline Entertainment gave them their instructions to copy

15   Plaintiff's copyright protected masters, which Plaintiff never authorized. (Exhibit 7 hereto.)

16   However, "those illicit copies were acquired by numerous companies around the world including

17   Defendants, who have been commercially exploiting Plaintiff's copyright protected Motion

18   Picture under the continuing violation doctrine." (Doc.16 at 11 ¶ 33, 2-4.)

19              **B.  Defendants Motion which seeks to have Plaintiff's Claim Dismissed for failure**

20                  **to State a Claim but acknowledge at least seven (7) allegations while ignoring**

21                  **other critical facts.**

22        "Mahon's only allegations against [Defendants] with respect to its alleged copyright

23   infringement total seven (7) allegations". (Doc.29 at 6, 5-7)

24        1.  "In 2016 "the Motion Picture was still being exploited in Ireland, the U.K. and Europe

25              by Defendants in violation of Plaintiff's copyright… (FAC at ¶ 32)." (Doc.29 at 6, 7-

26              9.) However, Defendants conveniently ignore that Doc.16 ¶ 32 also specifies "in

27              violation of Plaintiff's copyright 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5),

28              106(6), 501 and his moral rights contrary to 17 U.S.C. § 106A(a)." (Doc.16 at 10 ¶ 32,

- 7 -

1    20-21.) However, every right can be "owned separately [and] the owner of any

2    particular exclusive right is entitled, to the extent of that right, to all of the protection

3    and remedies accorded to the copyright owner". 17 U.S.C. § 201(d). Accordingly

4    Defendants should multiply the seven allegations by six for each count is separately

5    actionable, which actually totals 42 ***allegations*** and this is also excluding Plaintiff's

6    screenplay that has been infringed too.

7    2.    "Plaintiff also made a commercial purchase from YouTube himself in 2016…

8    Defendants were still violating Plaintiff's copyright and his moral rights in 2019 as

9    evidenced by a commercial purchase of same. (*Id.*)" (Doc.29 at 6, 10-12.) Defendants

10   ignore that Plaintiff also states "Mark Mahon is the sole owner of the copyright in an

11   original work that is fixed in a tangible media of expression. Effective on March 8,

12   2006, the United States Copyright Office issued a copyright registration certificate for

13   the original screenplay, STRENGTH AND HONOR to Plaintiff. It was assigned

14   number TXul-289-556 by the Copyright Office. Effective on August 6, 2009, the

15   United States Copyright Office issued a copyright registration certificate for his

16   Motion Picture, STRENGTH AND HONOUR, having registration number PA 1-642-

17   297. Effective on May 3, 2017, the United States Copyright Office issued a

18   supplementary copyright registration certificate for his motion picture, STRENGTH

19   AND HONOUR, to reflect that Plaintiff, Mark Mahon, is the registered author, writer,

20   producer, feature director and owner of exclusive rights of the Copyright having

21   registration number PA 1-398-376 at the U.S. Copyright Office." (Doc.16 at 12 ¶ 41.)

22   3.    "Defendants "have been commercially exploiting Plaintiff's copyright protected

23   Motion Picture under the continuing violation doctrine." (*Id*. at ¶ 33)." (Doc.29 at 6,

24   13-14.) Again, Defendants suitably leave out "since these illicit copies were created in

25   the State of California, then extraterritoriality copyright infringement applies to every

26   copy that stemmed from them, as the copyrighted Motion Picture masters were

27   'records' from which the work could be 'reproduced', and it is a tort to make them in

28   the United States." (Doc.16 at 11 ¶ 33, 5-8.)

4.  "In or around December 12, 2019, Plaintiff then wrote to Defendants and informed them that they had infringed his Copyright and that he is entitled to recover his actual damages." (*Id*. at ¶ 34)." (Doc.29 at 6, 15-17.) Defendants also ignore that Plaintiff carries on with "Plaintiff also attached a certified copy of his Certificate of Registration from the United States Copyright Office, PA1-398-376, certified by Comyn, Kellher, Tobin Solicitors and a letter from his Chartered Accountants and Registered Auditors, Moore, confirming his actual costs/damages". (Doc.16 at 11 ¶ 34, 14-17.)

5.  On January 24, 2020, "Plaintiff then wrote back to the YouTube Legal Support Team and noted that… he still needed to be compensated for YouTube violating his copyright. (*Id.* at ¶ 38)." (Doc.29 at 6, 18-20.) However, Defendants ignore that Plaintiff also wrote to Entertainment One, the company who had provided it to Defendants and "confirmed that copyright infringement lawsuits were being drafted against several companies including Entertainment One US LP for infringing [Plaintiff's] copyright." (Doc.16 at 12 ¶ 37, 1-3.)

6.  "Upon information, belief and proof of use, Defendants have produced, reproduced, distributed, sold for profit and publicly performed Plaintiff's copyright protected work and reproduced derivatives of Plaintiff's protected work that stemmed from the State of California in violation of his exclusive rights." (Id. at ¶ 42)." (Doc.29 at 6, 21-25.) Again, Defendants ignore that Plaintiff states "Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, distribute copies of his work for their own profit, to make or reproduce derivative works, sell the copyrighted work without Plaintiff's consent and to publicly display an illicit cover and trailer of his Motion Picture."  (Doc.16 at 13 ¶ 42, 4-8.) Further, Defendants also ignore that Plaintiff specifies that Defendants infringed his rights with the "infringement of Plaintiff, Mark Mahon's rights as author, writer, producer, feature director and owner of exclusive rights of his Motion Picture, 'STRENGTH AND HONOUR.' (Doc.16 at

13 ¶ 43, 12-14.)

7.   "Upon information, belief and proof of use, Defendants have produced, reproduced, distributed, sold for profit and publicly performed Plaintiff's copyright protected work and with unauthorized derivatives that stemmed from the State of California in violation of Plaintiff's moral rights. Defendants' acts violate Plaintiff's rights to attribution and integrity as author of the Motion Picture." (Id. at ¶ 48)." (Doc.29 at 6, 26-28; at 7, 1-2 .) Again, they ignore the rest of ¶ 48 which continues "under the Copyright Act, 17 U.S.C, §§ 106A(a) and 501, which include Plaintiff's exclusive rights "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation," and/or Plaintiff's exclusive rights that "prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right." (Doc.16 at 14 ¶ 48, 5-9.)  Defendants also conveniently ignore that Plaintiff specifies that "Plaintiff never assigned his moral rights or right of the author to any individual, corporate, associate or otherwise in any country of the world … [and] Defendants have directly and contributorily infringed the exclusive rights of the author., i.e. Plaintiff, Mark Mahon." (Doc.16 at 14 ¶ 49, 15-18.)

They then state "Mahon's allegations are insufficient to state a plausible claim of either copyright infringement or infringement of "the right of the author." (Doc.29 at 7, 7-8.) However, Defendants also ignore that Plaintiff had prima facie evidence attached to Doc.16 of clear evidence that they were selling his copyright protected work and at a minimum, were infringing Plaintiff's copyright in relation to 17 U.S.C. §106(5) as the cover images were never authorized by Plaintiff. (Doc.16-4 at 56, Doc.16-5 at 2, 3, 4,5, 6, 7, 9, 10, 12, 13, 14, 29 through 36.)

Further, Plaintiff solely owns the Copyright of the Motion Picture. (Exhibit 2, 3, 4 hereto.) Plaintiff never assigned any right to Defendants to:

-   (1) to reproduce the copyrighted work in copies or phonorecords, as defined by 17 U.S.C. § 106 (1).

-   (2) to prepare derivative works based upon the copyrighted work, , as defined by 17

- 10 -

U.S.C. § 106 (2).

- (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, , as defined by 17 U.S.C. § 106 (3).

- (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly, as defined by 17 U.S.C. § 106 (4).

- (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and , as defined by 17 U.S.C. § 106 (5).

- (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission, , as defined by 17 U.S.C. § 106 (6).

So, while Defendants may conclude that Defendants allegations "are mere conclusory statements" (Doc.29 at 6, 6) this is simply because Plaintiff never transferred any rights to Defendants, ever. It also should be noted too, that Defendants acknowledge that Plaintiff stated that his Motion Picture was being sold in Ireland. (Doc.29 at 6, 7-8.) Plaintiff further also attached a proof of purchase that Plaintiff made directly from Defendants in Ireland on October 27, 2016 (Doc.16-5 at  2, 3, 4, 5, 6, 7; Decl.Mahon ¶ 14) and again, in Ireland on January 2, 2019 (Doc.16-5 at 9, 10, 12, 13, 14; Decl.Mahon ¶ 15.) The purchase in October 27, 2016 clearly shows on the YouTube receipt (Doc.16-5 at 5 - 7) that the payment was "transaction was processed by *Google* Commerce Limited, which can be reached at: *Google* Commerce Limited, Attn: *YouTube Paid Services*, Gordon House, Barrow Street, Dublin 4, *Ireland*" (emphasis added)(Doc.16-5 at 7) and the Copyright clearly states "©2016 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066" (Doc.16-5 at 7.) Plaintiff also confirms that the purchase that he made on January 2, 2019 was made in Ireland (Doc.16-5 at 9, 10, 12, 13, 14; Decl.Mahon ¶ 15) and was processed by his bank in Ireland on January 7, 2019 as "POS Google YouTu." (Doc.16-5 at 14.) Plaintiff also confirms that he never authorized the cover that Defendants are selling his motion picture with as Plaintiff never assigned these rights to MPL or any individual, party, corporate,

1   associate, entity or otherwise ***ever***, and are indeed, infringing his copyright. (Doc.16-5 at 2, 3, 4,

2   9, 10, 32, 33, 36.) However, only in another lawsuit that is before this court too, Case no. 4:20-cv-

3   01523-YGR, which was deemed related to this case pursuant to Civil L.R. 3-12 and 7-11 on

4   04/22/20, the Defendants in that matter *Mainsail LLC* et al. filed a declaration on 04/07/20

5   confirming that they were "authorized to represent the Film in territories outside the Unites [sic]

6   States and Ireland and never represented the Film in either the United States or Ireland." (Exhibit

7   8 hereto). While Defendants may claim that the "allegations set forth in the FAC relate to third

8   parties unconnected to [Defendants]-primarily Mainsail and Entertainment One" (Doc.29 at 8, 8-

9   10) this still does not change that Defendants were also exploiting Plaintiff's Motion Picture

10   without his consent and indeed, infringing his copyright by displaying his motion picture publicly

11   with a cover that he never authorized and contrary to 17 U.S.C. § 106(5).

12         Defendants further claim that "[r]iveting as Mahon's narrative may be, these allegations –

13   which make up the bulk of FAC – ***have nothing to do with [Defendants]***" (Doc.29 at 9, 12-13)

14   they completely ignore that they were selling his Motion Picture without his consent in Ireland at

15   a minimum. (Decl.Mahon ¶ 14, 15.) While Defendants may think that this may give them a free

16   pass for jurisdictional reasons, it does not as 1. the Motion Picture masters were copied in Los

17   Angeles without Plaintiff's consent contrary to 17 U.S.C. §§ 106(1), 106(2), 106(4), 106(5) and

18   106(6) and 2. previous circuit court rulings have found that the copyright holder may recover

19   damages that stem from a direct infringement of its exclusive rights that occurs within the United

20   States. *Sheldon v. Metro-Goldwyn Pictures Corporation*, 106 F.2d 45, 52 (2d Cir. 1939) (L.

21   Hand, Judge.) ("The [copyrighted motion picture] negatives were 'records' from which the work

22   could be 'reproduced', and it was a tort to make them in this country. The defendants

23   acquired an equitable interest in them as soon as they were made, which attached to any profits

24   from their exploitation. . . ."), aff'd, 309 U.S. 390 (1940); *Famous Music Corporation v. Seeco*

25   *Records, Inc.*, 201 F. Supp. 560, 568-69 (S.D.N.Y. 1961). In these cases, liability is not based on

26   contributory infringement, but on the theory that the infringing use would have been actionable

27   even if the subsequent foreign distribution that stemmed from that use never took place.

28         "It is well established that copyright laws generally do not have extraterritorial

- 12 -

1   application. There is an exception – when the type of infringement permits further reproduction

2   abroad – such as the unauthorized manufacture of copyrighted material in the United States."

3   *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). *See also Los Angeles*

4   *News Ser. v. Reuters Television I*, 149 F.3d 987 (9th Cir. 1998) (Finding that plaintiff was

5   "entitled to recover damages flowing from exploitation abroad of the domestic acts

6   of infringement committed by defendants").

7          Defendants further state "[a]ll he pleads is a vague allegation that the Film was being

8   exploited "in Ireland, the U.K. and Europe" (*id.* at ¶ 32 & Ex. 37), and he includes exhibits

9   showing the Film was paid for in euros (*id.* at Ex. 31-33)." (Doc.29 at 9, 21-23.) However, the

10   YouTube receipts clearly demonstrate that the motion picture was purchased in Ireland. (Doc.16-

11   5 at 5 – 7, 14.; Decl.Mahon ¶ 14, 15.)

12          "Under the [Copyright] Act's three-year provision, an infringement is actionable within

13   three years, and only three years, of its occurrence. And the infringer is insulated from liability for

14   earlier infringements of the same work. See 3 M. Nimmer & D. Nimmer, Copyright §

15   12.05[B][1][b], p. 12-150.4 (2013) ("If infringement occurred within three years prior to filing,

16   the action will not be barred even if prior infringements by the same party as to the same work are

17   barred because they occurred more than three years previously."). Thus, when a defendant has

18   engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright

19   holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of

20   infringement ( i.e., acts within the three-year window), but untimely with respect to prior acts of

21   the same or similar kind." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)

22          **2.   *The Infringement of Author's Rights Claim (Second Claim for Relief) Must Not be***

23               ***Dismissed***

24                   Article I, section 8, clause 8, of the Constitution states: "The Congress shall have

25   Power . . . To promote the Progress of Science and useful Arts by securing for limited Times to

26   Authors . . . the exclusive Right to their . . . Writings. . . ." As is clear from its text, that clause of

27   the Constitution grants no substantive protections to authors. Rather, Congress is empowered to

28   provide copyright protection.

Copyright, therefore, is a creature of statute, and the only rights that exist under copyright law are those granted by statute. As the Supreme Court wrote 170 years ago:

> This right [in copyright] . . . does not exist at common law-it originated, if at all, under the acts of congress. No one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed. . . .

*Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64, 8 L.Ed. 1055 (1834); *see also Stewart v. Abend*, 495 U.S. 207, 251, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (Stevens, J., dissenting) (stating that copyright is statutorily created); *M. Kramer Mfg. Co. v. Andrews,* 783 F.2d 421, 432 (4th Cir. 1986) ("The right of copyright is a creature of federal statute, with its constitutional base in Article I, § 8, cl. 8."); *Russell v. Price*, 612 F.2d 1123, 1129 n. 17 (9th Cir. 1979) ("Common-law copyright is no longer recognized under the [1976] Act. . . ."); *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1084 (D.Md. 1995) ("Unlike contracts, copyrights and the rights flowing therefrom are entirely creatures of statute. . . ."). Accordingly, our starting point is the statute.

To enhance this ideal, H.R. 4262 was introduced on March 28, 1988 at the 100th Congress, 1987-1988. It was a bill to amend title 17, United States Code, to implement the Berne Convention for the Protection of Literary and Artistic Works, which was first accepted in Berne, Switzerland in 1886, as revised at Paris on July 24, 1971. Usually known as the Berne Convention, it is an international agreement governing copyright. The bill named the "Berne Convention Implementation Act of 1988" was enacted by Congress and signed into law by President Ronald Reagan on October 31, 1988.

The bill provides under Sec 3 as follows:

(a) Relationship with Domestic Law.—The provisions of the Berne Convention—

(1) shall be given effect under title 17, as amended by this Act, and any other relevant provision of Federal or State law, including the common law; and

(2) shall not be enforceable in any action brought pursuant to the provisions of the Berne Convention itself.

(b) Certain Right Not Affected. – The provisions of the Berne Convention, the adherence of the United

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
CASE NO. 4:20-CV-01525-YGR

States thereto, and satisfaction of United States obligations thereunder, do not expand or reduce any right of an author of a work, whether claimed under Federal, State, or the common law-

(1) To claim authorship of the work; or

(2) To object to any distortion, mutilation, or other modification of, or other derogatory action in relation to, the work, that would prejudice the author's honor or reputation.

As noted by Steven Spielberg at the 100th hearings at Congress. "The Berne Treaty, Mr. Chairman, gives voice to this idea that art and the artist are not commodities to be treated like sausage. The Berne treaty gives to the artist a specific standing to object to a defacement of his or her work, and it recognizes moral rights as distinct from economic rights." *See Hearings, 100th Cong*., supra note 4, at 479-546 (statements of George Lucas and Steven Spielberg). 118. Id. at 502 (statement of Steven Spielberg).

Turning to 17 U.S.C. § 102, Subject matter of copyright. It provides, in part:

(a) Copyright protection subsists, in accordance with this title, in ***original works of authorship fixed in any tangible medium of expression***, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. ***Works of authorship*** include the following categories: (emphasis added)

    (1)  literary works;

    (2)  musical works, including any accompanying words;

    (3)  dramatic works, including any accompanying music;

    (4)  pantomimes and choreographic works;

    (5)  pictorial, graphic, and sculptural works;

    (6)  motion pictures and other audiovisual works;

    (7)  sound recordings; and

    (8)  architectural works.

17 U.S. Code § 106. Exclusive rights in copyrighted works. It provides:

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CASE NO. 4:20-CV-01525-YGR

17 U.S. Code § 106A. Rights of certain authors to attribution and integrity. It provides, in part:

> (3) subject to the limitations set forth in section 113(d) [3], shall have the right—
>> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
>> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

Pursuant to 17 U.S.C. § 102, "Works of authorship" include "(1) literary works … (6) motion pictures and other audiovisual works." Turning back to Sec 3(a)(1) of the 'Berne Convention Implementation Act of 1988,' provides [the Berne Convention] "shall be given effect under title 17, as amended by this Act, and any other relevant provisions of Federal or State law, including common law". In other words, violations have to be executed generally under title 17. While Plaintiff accepts that he can claim copyright infringement under 17 U.S.C. § 106(5) for violation of "the individual images of a motion picture … [and] display[ing] the copyrighted work publicly" which violate his copyright and protects Plaintiff for Defendants for infringing the images on the illicit and unauthorized cover they used, this still does not give Plaintiff his legal entitlement to protection in accordance with an international copyright treaty of which the United States is a signatory, namely the Berne Convention for the Protection of Literary and Artistic Works. Further, it is legislated for Plaintiff to receive to "prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right" and "prevent[ing] any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right." Plaintiff submits that the only way he can seek relief under title 17 for these rights is pursuant to 17 U.S.C. §§ 106A(a)(3)(A) and 106A(a)(3)(B). Plaintiff also respectfully submits that this is the reason why 17 U.S.C. § 501 which addresses "Infringement of copyright" provides at § 501 (a): [4]

> "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) … is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright

---

[3] 17 U.S.C. 113 provides for 'Scope of exclusive rights in pictorial, graphic, and sculptural works.'
[4] "STRENGTH AND HONOUR" as a "literary work" is also an award-winning screenplay, which is infringed too.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
CASE NO. 4:20-CV-01525-YGR

1   shall be deemed to include the rights conferred by section 106A(a)."

2   Separately, Sec 3(b) of the 'Berne Convention Implementation Act of 1988' provides for

3   "Certain Rights Not Affected" and states specifically under 3(b)(2) "to object to any distortion,

4   mutilation, or other modification of, or other derogatory action in relation to, the work, that would

5   prejudice the author's honor or reputation."

6   Put differently, if Plaintiff cannot seek the relief he requires as allowed for under title 17

7   and as separately provided pursuant to Sec 3(a) of the Berne Convention Implementation Act of

8   1988, then Plaintiff respectfully submits that Defendants have violated an international copyright

9   treaty of the United States, as enacted by Congress in 1988 and indeed, violated the Berne

10   Convention for the Protection of Literary and Artistic Works (1886) as the illicit covers and

11   unauthorized copies were created in the State of California. Furthermore, there can be no denying

12   that a motion picture that received two Irish Film and Television Academy award nominations,

13   was nominated for over thirty (32) awards all over the globe, won over twenty (20) separate

14   awards in film festivals all over the world, hosted to a Royal screening by His Serene Highness,

15   Prince Albert, Sovereign Prince of Monaco at the Palace of Monaco, and invited on the TODAY

16   show in New York to discuss the Motion Picture was "distort[ed], mutilate[ed], or…

17   modif[ied]… in relation to, that work, that [did] prejudice the author's [Plaintiff's] honor or

18   reputation." Sec 3(b)(2) of the ***Berne Convention Implementation Act of 1988***. (Doc.16-2 at 2, 7

19   through 22, 24 through 26, 28, 29.) Separate to prejudicing Plaintiff's honor who had spent over

20   two years travelling around the international film festival circuit to create an award-winning

21   branding for the Motion Picture, Plaintiff's reputation was also sullied with the Motion Pictures'

22   leading actor, Michael Madsen, who was contractually to receive first billing on the Motion

23   Picture but did not even appear on the illicit and unauthorized cover. (Doc.16-4 at 12.)

24   Further, Plaintiff submits that Defendants had a duty of care to do proper due diligence

25   that could have "prevent[ed] [further] destruction of a work of recognized stature, [as] any

26   intentional or grossly negligent destruction of that work is a violation of that right." (Doc.16-2 at

27   2, 4, 5, 7-22, 24-26, 28-29.)

28

- 17 -

1    However, while Plaintiff respectfully submits that there is no precedent in case law to

2    support his legal theory, it still does not take away from the legitimacy of the relief that he seeks.

3    Moreover, every law in existence had to be ruled on for a first time in order for it to become

4    precedent. Furthermore, this court is required to act according to laws enacted by Congress and

5    accordingly, Sec 3(a)(1) of the Berne Convention Implementation Act of 1988 provides the Berne

6    Convention "shall be given effect under title 17, as amended by this Act, and any other relevant

7    provisions of Federal or State law, including **common law**," (emphasis added) so Plaintiff

8    respectfully submits that if this court cannot give Plaintiff the relief he seeks under 17 U.S.C. §

9    106A(a), then the court should give him relief under common law, or else deem that Defendants

10   have violated an international Copyright treaty, namely the Berne Convention for the Protection

11   of Literary and Artistic Works (1886) and indeed, a Treaty of the United States, namely the

12   'Berne Convention Implementation Act of 1988.'

13       Further, "it is virtually axiomatic that the public interest can only be served by upholding

14   copyright protections and correspondingly, preventing the misappropriation of skills, creative

15   energies and resources which are invested in the protected work." Warner Bros. Entm't, Inc. v.

16   WTV Sys., 824 F.Supp.2d 1003, 1015 (C.D. Cal. 2011); see also Disney Enters., Inc. v.

17   VidAngel, Inc., 224 F. Supp. 3d 957 (C.D. Cal. 2016).

18       "The Court notes that the public interest is also served by upholding the rights of

19   copyright owners, "[o]therwise, the rationale for protecting copyright, that of encouraging

20   creativity, would be undermined." *Video Pipeline, Inc. v. Buena Vista Home Entert., Inc.*, 192 F.

21   Supp. 2d 321, 347 (D.N.J. 2002) (citing from *Apple Computer v. Franklin Computer Corp.*, 714

22   F.2d 1240, 1253 (3d Cir. 1983)).

23

24       Furthermore "where creative energies, money, and effort were undoubtedly put forth in

25   these endeavors of full-length motion pictures, the public interest favors the protection of

26   copyright, and the concomitant encouragement of individual creativity and ingenuity." *Video

27   Pipeline, Inc. v. Buena Vista Home Entert., Inc.*, 192 F. Supp. 2d 321 (D.N.J. 2002).

28   ///

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim should be denied.

Dated: April 29, 2020

Respectfully submitted,

By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork
Ireland
Telephone: 353 87 742 4444
*Plaintiff Pro Se*