Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Tel: + 353 87 742 4444

*Plaintiff Pro Se*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| MARK MAHON, AN INDIVIDUAL,<br><br>    Plaintiff,<br><br>    v.<br><br>YOUTUBE LLC.; GOOGLE LLC, D/B/A YOUTUBE.; and DOES 1 - 12,<br><br>    Defendants. | CASE NO. 4:20-cv-01525-YGR<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. COPYRIGHT INFRINGEMENT;<br><br>**DEMAND FOR JURY TRIAL**<br><br>JUDGE: HON. YVONNE GONZALEZ ROGERS |

Plaintiff, Mark Mahon, alleges as follows:

## JURISDICTION

1. This is a civil action seeking damages for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §§ 101, *et seq.*

2. The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court also has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 under diversity of citizenship and pursuant to 28 U.S.C. § 1350 for a violation of the 'Berne Convention for the Protection of Literary and Artistic Works' in accordance with the "Berne Convention Implementation Act of 1988".

## VENUE

4. This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, and acts of infringement complained of herein occurred in the State of California.

5. Venue in this district is proper pursuant to 28 U.S.C § 1391 in that Defendants reside in this judicial district or have substantial ties to this district. Defendants are also subject to the court's jurisdiction with respect to this civil action under 28 U.S.C. § 1400 in that civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant resides or may be found.

## THE PARTIES

6. Plaintiff, Mark Mahon, ("Plaintiff") is an Irish Film and Television Academy award nominated independent filmmaker based in Cork, Ireland, whose creative work and books have been featured and sold throughout the world.

7. Defendant YouTube LLC. ("Defendant" or "YouTube") is, on information and belief, an American video-sharing platform headquartered in San Bruno, California. YouTube allows users to upload, view and share videos. It offers a wide variety of user-generated and

corporate media videos. Available content includes video clips, TV show clips, music videos, short and documentary films, movie trailers, live streams, and other content such as video blogging, short original videos, and educational videos. Most content on YouTube is uploaded by individuals. The vast majority of its videos are free to view, but there are exceptions, including subscription-based premium channels, film rentals, as well as YouTube Music and YouTube Premium.

8. Defendant Google LLC, D/B/A YouTube ("Defendant" or "Google") is, on information and belief, the owner of YouTube as Google bought the site in November 2006 for U.S.$1.65 billion according to public record. YouTube now operates as one of Google's subsidiaries. Google is an American multinational technology company that specializes in internet-related services and products, which include online advertising technologies, search engine, cloud computing, software, and hardware. It is considered one of the Big Four technology companies, alongside Amazon, Apple, and Facebook.

9. The true names and capacities of the defendants named herein as DOES 1 through 12, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff is informed and believes, an thereon alleges, that each of the defendants designated herein as DOE is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein. Plaintiff will seek leave to amend the Complaint when the true names and capacities of said DOE defendants have been ascertained. YouTube LLC., Google LLC, D/B/A YouTube and DOES 1 through 12 are hereinafter collectively referred to as "Defendants."

10. Plaintiff is informed, believes and has proof, and on that basis avers, that each of the Defendants participated in or benefitted from and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

11. Plaintiff is informed, believes and has proof, and on that basis avers, that each of the Defendants and DOES 1 - 12 has acted in concert and participation with each other concerning the claims in this Complaint.

12. Plaintiff is informed and believes, and on that basis alleges, that each of the

3

Defendants and DOES 1 - 12 was empowered to act as the agent, servant and/or employees of each other, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them.

**BACKGROUND AND FACTUAL ALLEGATIONS**

13. At all times relevant hereto, Plaintiff has been and still is the holder of the Exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to reproduce, copy, publicly perform, distribute, sell, display, or license the reproduction, to make or reproduce derivative works, and/or display of his award-winning motion picture, trailer and award-winning cover [1](Doc.16-2 at 2 [*Exh*. 1]), which is the subject of this action (referred to herein as "STRENGTH AND HONO[U]R") throughout the world.

14. Plaintiff is an entrepreneur who has used his experience, talent, and creativity developed over years of hard work to pursue his goal of making motion pictures. Plaintiff, Mark Mahon authored, wrote, produced, directed and financed his award-winning motion picture, 'STRENGTH AND HONO[U]R' (the "Motion Picture") starring Michael Madsen, Vinnie Jones and Richard Chamberlain, by depleting his life savings and personally borrowing money from his family and close friends. (Doc.16-2 at 4, 5 [*Exh*. 2]; Doc.34-4 at 1, 2.; Doc.16-2 at 31 [*Exh*. 6].)

15. The Motion Picture follows the struggle of a single father who has to break his dying wife's last wish to never box again in order to save his young son's life; Plaintiff spent over two years travelling around the world on the international film festival circuit with his main actors to create a branding for the Motion Picture. (Doc.16-2 at 7 through 22 [*Exh*. 3].) It received two Irish Film and Television Academy award nominations (Doc.16-2 at 7), was nominated for over thirty (32) awards around the globe and won over twenty (20) awards in film festivals all over the world. (Doc.16-2 at 2 [*Exh*. 1]; Doc.16-2 at 7 through 22 [*Exh*. 3].) Plaintiff's success created such strong word of mouth about the Motion Picture at the end of the film festival campaigning,

---
[1] Plaintiff refers to Exhibits ("*Exh*") attached to First Amended Complaint (referred herein as "Doc.16") filed on March 24, 2020 in order to avoid doubling up on Exhibits, which are already part of the record. (ECF 16.)

Plaintiff was hosted to a Royal screening by His Serene Highness, Prince Albert, Sovereign Prince of Monaco at the Palace of Monaco (Doc.16-2 at 24 through 26 [*Exh*. 4]). Plaintiff, Mark Mahon and the Motion Picture's leading actor, Michael Madsen, were also invited on the TODAY show in New York to talk about 'STRENGTH AND HONO[U]R' by Meredith Vieira. (Doc.16-2 at 28, 29 [*Exh*. 5].)

16. Plaintiff is the legal, beneficial owner, registered author and Copyright owner of the screenplay having registration no.TXul-289-556 at the United States Copyright Office (Doc.16-2 at 31 [*Exh*. 6]), the legal and beneficial owner of the Motion Picture's Copyright having registration no. PA 1-642-297 at the U.S. Copyright Office (Doc.34-4 at 1, 2) and the legal, beneficial owner, registered author, writer, producer, feature director and owner of the exclusive rights of the Motion Picture's Copyright having registration no. PA 1-398-376 at the U.S. Copyright Office. (Doc.16-2 at 4, 5 [*Exh*. 2].)

17. Plaintiff assigned his rights in trust to 'Maron Pictures Ltd., t/a Maron Pictures Limited Liability Company and Maron Pictures' ("Maron Pictures") under an 'Agreement to Acquire Literary Material' (Doc.16-3 at 2 through 16 [*Exh*. 7]) and 'Agreement to Acquire Authorship Rights' on September 25th, 2006. (Doc.16-3 at 18 through 28 [*Exh*. 8].) Both agreements, in combination with each other, were to pay Plaintiff €300,000.00 (Three Hundred Thousand Euro) no later than the 30th day of September, 2015, in order for his grant of rights to become permanently assigned. In the event of non-payment, Plaintiff had the right to **revoke all rights** granted to Maron Pictures. (Doc.16-3 at 7, 8 [*Exh*. 7] ; Doc.16-3 at 21, 22 [*Exh*. 8] ; Doc.16-3 at 30, 31 [*Exh*. 9].)

18. Further, Plaintiff *never* "waive[d] his benefit of any provision of law known as the "droit moral" or moral rights or any similar law in any country of the world" (Doc.16-3 at 21 [*Exh*. 8]) and the only award-winning display cover that was ever authorized by Plaintiff contains the Motion Picture's leading actor, Michael Madsen, in the main body of the poster, displayed awards won from film festivals around the world, listed two Irish Film and Television Academy award nominations and two quotes branding the Motion Picture as the award-winning motion picture it is. (Doc.16-2 at 2 [*Exh*. 1].)

5

19. In or around April 2009, Maron Pictures then *only* assigned "the sole and exclusive right, license and privilege to license to distribute" under a 'Grant of Rights' or the distribution right pursuant to 17 U.S.C. § 106(3) to Mainsail LLC ("Mainsail") for "the entire world, excluding North America and Ireland" in accordance with 17 U.S.C. § 201(d). Mainsail also does business under the banner of Shoreline Entertainment, Inc. However, Maron Pictures never transferred its rights pursuant to 17 U.S.C. §§ 106 (1), 106 (2), 106(4), 106(5) and 106(6) to any individual, corporate, associate or otherwise. Further, 17 U.S.C. § 201(d) TRANSFER OF OWNERSHIP states "(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or operation of law" and "(2) Any of the exclusive rights comprised in a copyright, including any subdivision of any rights specified by section 106, may be transferred as provided by clause (1) and owned separately. ***The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title***." (emphasis added.) Plaintiff at the outset sent Mainsail the key Art PSD file for the only authorized award-winning cover to be displayed publicly and 27 high resolution photographs as requested by them. (Doc.16-3 at 33, 34 [*Exh*. 10].) Then, as part of the Mainsail agreement, ***Maron Pictures sent ALL the master elements for the Motion Picture 'STRENGTH AND HONO[U]R' to Visual Data Media Services, Inc*** ("Visual Data") ***in Burbank, California*** (Doc.16-4 at 2 through 6 [*Exh*. 11]; Doc.16-4 at 41 through 44 [*Exh*. 25]) including the only authorized trailer to be displayed publicly, as an award-winning motion picture. (Doc.16-4 at 8 [*Exh*. 12].)

20. In or around January 2010, the Motion Picture was commercially released in the Republic of Ireland (Doc.16-4 at 10 [*Exh*. 13]) and Europe with counterfeit covers and trailer, and not the cover or trailer Plaintiff had provided to Mainsail in violation of his rights, 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5) and 501. (Doc.16-4 at 12 [*Exh*. 14].) Plaintiff instructed Mainsail to "cease and desist" from distributing 'STRENGTH AND HONO[U]R' and wanted all product removed from "any place where the product's images or trailers [wa]s listed for sale". (Doc.16-4 at 14 [*Exh*. 15].) In a follow-up email, Plaintiff instructed Mainsail that they "are in breach of [their] contract and the contracts in place with [Plaintiff] and Michael Madsen [Motion

6

SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

Picture's leading actor]. Remove all product until the matter is resolved, as failure to do so will result in [Plaintiff] seeking substantial damages and costs from [Mainsail] and E1." (Doc.16-4 at 17 [*Exh*. 16].) Tom Jarvis of E1 Entertainment UK Ltd. ("Entertainment One") was also cc'ed during this correspondence. Mainsail was also provided the entire cast and crew contracts in relation to the Motion Picture as part of their delivery. (Doc.16-4 at 19 [*Exh*. 17].)

21. On February 9, 2010, Maron Pictures contacted Entertainment One directly as its "cease and desist" instructions to Mainsail were ignored and spoke to Poonam Sahota, Acquisitions Manager. It explained that the marketing and artwork was a clear violation of Plaintiff's contract, the Motion Picture's leading actor, Michael Madsen's contract and asked Entertainment One to "cease and desist" with their release in Ireland and scheduled release in the United Kingdom for February 22, 2010. Later that day, Poonam Sahota emailed Maron Pictures and implied in her email that Maron Pictures was happy for them to proceed with the marketing and artwork. (Doc.16-4 at 21 [*Exh*. 18].)

22. On February 12, 2010, Maron Pictures emailed Poonam Sahota of Entertainment One and again relayed that it was "not happy about proceeding with the current marketing and artwork." It further reiterated that it is "a clear breach of Mr. Madsen's and [Plaintiff's] contract". (Doc.16-4 at 24, 25 [*Exh*. 19].) Less than an hour later, Plaintiff emailed Entertainment One again and stated "[Maron Pictures] would like to make it very clear, [Maron Pictures] never agreed on the phone that [Maron Pictures] would allow initial stock to go out". Plaintiff continued, "[y]ou suggested that it should go out and that we could change it on the next print run but [Plaintiff] never agreed to it." (Doc.16-4 at 28 [*Exh*. 20].)

23. Later the same day, Poonam Sahota of Entertainment One emailed Maron Pictures and stated that she "copied Sam [Eigen] who represents Mainsail, LLC, [Entertainment One's] contractual licensor." She further stated that "contractually our release as is, is above par and the contract which we entered into with Mainsail authorizes us to go ahead with the release." She further confirmed that "Sam [Eigen] has informed us further that the actor agreement with Michael Madsen [leading actor] indicates that Michael Madsen is to receive second position billing." Of course, this information that she relayed was factually incorrect, as Michael Madsen

7

SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

is the leading actor of the Motion Picture and was to receive first position billing. It also should be noted that not only did Mr. Madsen not receive his contractual first billing, but he did not even appear on the cover. (Doc.16-4 at 12 [*Exh*. 14].) In response to Poonam Sahota, Maron Pictures pointed out there are "lots of inaccuracies in [her] email on [Mainsail's] behalf, even [Mainsail's] quote about having all control over the manner that it shall be sold and marketed," which referred to how it would be marketed and sold to industry buyers as 1. Mainsail were never assigned Plaintiff's moral rights by Maron Pictures under its 'Grant of Rights' which is very precise about the Rights that were only assigned pursuant to 17 U.S.C. § 201(d), and 2. Plaintiff as the Author of the Motion Picture did "not waive his benefits of any provision of law known as the "droit moral" or moral rights or any similar law in any country of the world" to begin with, so it was not possible for Maron Pictures to assign Rights it never had control of, nor were ever assigned. (Doc.16-3 at 21 [*Exh*. 8].) Maron Pictures further made it clear that Entertainment One were told a "bare face lie in relation to Mr. Madsen's contact" by Mainsail. Maron Pictures again asked for an opportunity to speak to her directly, and assured her that "[i]f [Maron Pictures] can come to a meeting of minds with E1, then [Maron Pictures] will do this, which is why [Maron Pictures] would [like] a brief opportunity to speak to you." (Doc.16-4 at 30 [*Exh*. 21].)

24. On February 14, 2010, with no response forthcoming from Entertainment One to its request, Maron Pictures again asked Poonam Sahota of Entertainment One in a single line email, "[c]an we schedule a call for maybe sometime tomorrow?" Ms. Sahota of Entertainment One replied later that day stating "I met with Sam at Shoreline today and I think the best and simplistic approach for us all is for our communications to go through them." (Doc.16-4 at 33 [*Exh*. 22].)

25. On February 19, 2010, Plaintiff emailed Poonam Sahota of Entertainment One and was looking to have five questions answered in relation to his copyright protected Motion Picture (Doc.16-4 at 36 [*Exh*. 23]), which was read but completely ignored. (Doc.16-4 at 39 [*Exh*. 24].)

26. Throughout 2010, Maron Pictures also made various requests for information from Visual Data in Burbank, California but its requests were refused due to Visual Data's contractual arrangements with Mainsail. However, Maron Pictures were provided a "Masters Report" as a

8

professional courtesy of all the master elements for the Motion Picture and award-winning trailer that Maron Pictures had supplied to Visual Data on October 15, 2010. (Doc.16-4 at 8 [*Exh*. 12]; Doc.16-4 at 41 through 44 [*Exh*. 25].)

27. On December 17, 2010, Maron Pictures again contacted Entertainment One and outlined that there is "a major dispute with Shoreline Entertainment." Maron Pictures further reiterated that Entertainment One "are aware of some of [the] complaints since the beginning of the year, including the unauthorized covers and trailer which violates [Plaintiff's] contracts, amongst other things." Maron Pictures also relayed that it "wanted to make [Entertainment One] aware of the current situation, as a professional courtesy, since [Maron Pictures] have had no accountability in any manner from [Mainsail/Shoreline Entertainment]." (Doc.16-4 at 46 [*Exh*. 26].) Again, the email was read but was completely ignored. (Doc.16-4 at 49 [*Exh*. 27].)

28. Since 2010, the Motion Picture was licensed for use and commercially released in over 41 countries, namely 1. Bahrain 2. Egypt 3. Iran 4. Iraq 5. Jordan 6. Kuwait 7. Lebanon 8. Oman 9. Palestinian Territories 10. Qatar 11. Saudi Arabia 12. Syria 13. United Arab Emirates 14. Republic of Yemen 15. Algeria 16. Morocco 17. Tunisia 18. Libya 19. Mauritania 20. Sudan 21. Somalia 22. Malta 23. Ireland 24. United Kingdom 25. Romania 26. Thailand 27. Vietnam 28. Australia 29. New Zealand 30. Russia 31. Turkey 32. Indonesia 33. Malaysia 34. Brunei 35. Greece 36. Cyprus 37. Sweden 38. Denmark 39. Norway 40. Finland and 41. Iceland. It turned millions of dollars globally and enjoyed success all over the world. However, Plaintiff was not paid his consideration in accordance with his 'Agreement to Acquire Literary Material' and his 'Agreement to Acquire Authorship Rights' because Maron Pictures was never paid one brown cent or received a single royalty report from Mainsail LLC. Accordingly, on the ***1st day of October, 2015, Plaintiff sent a formal 'Notice of Contract Revocation' to Maron Pictures revoking all rights*** he had assigned to it as per clauses 5 and 4 of his Agreement, respectively. (Doc.16-3 at 7, 8 [*Exh*. 7] ; Doc.16-3 at 21, 22 [*Exh*. 8] ; Doc.16-3 at 30, 31 [*Exh*. 9].) Further, under the 'Assignment' clauses 14 and 11 of his Agreement, respectively, it states "Purchaser may assign and transfer this agreement or all or any part of its rights hereunder to any person, firm or corporation without limitation, and ***this Agreement shall be binding upon*** and inure to the

9

benefit of ***the parties hereto and their successors, representatives and assigns*** forever."
(emphasis added.) (Doc.16-3 at 13 [*Exh*. 7] ; Doc.16-3 at 26 [*Exh*. 8].)

29. At a court hearing pursued by Maron Pictures in State court during June 2016, the court found that Mainsail LLC "stopped all licensing activities when it received a "cease and desist" letter from Maron Pictures on January [30], 2010." (Doc.16-4 at 14 [*Exh*. 15].) Mainsail (who had no rights relating to the Motion Picture other than those arising out of their agreement) also testified that Maron Pictures never delivered the Motion Picture to them, which Maron Pictures still disputes as (1) it was just not possible for Mainsail to get the masters or individual elements for 'STRENGTH AND HONOUR' from anywhere else in the world, and (2) any derivative that was unlawfully created could only be produced from the master elements that were provided by Maron Pictures.

30. On December 1, 2016, Plaintiff met with a copyright solicitor on a personal basis, Mark Stafford, partner of Lee & Thompson LLP in London, who had also been sent the 'Notice of Contract Revocation' that Plaintiff had sent Maron Pictures on October 1, 2015, and sought legal advice in relation to same. (Doc.16-4 at 52 through 54 [*Exh*. 28].)

31. On December 9, 2016, the court then granted Judgment in favor of Mainsail LLC, Shoreline Entertainment, Inc., Sam Eigen and decreed that Maron Pictures would take nothing by way of its complaint. (Doc.16-4 at 58, 59 [*Exh*. 30].) In other words, the court ruled that the contract was ***not*** enforceable and thus, Maron Pictures was not entitled to an accounting. However, since Maron Pictures never delivered the Motion Picture as claimed by Defendants, i.e. Plaintiff's personal property, Defendants had no legal right to use Plaintiff's property and had used it without Maron Pictures consent before October 1, 2015 and used it without Plaintiff's consent under the continuing violation doctrine.

32. Meanwhile, Plaintiff's Motion Picture still continued to be performed around the world in 2016 contrary to Mainsail's testimony and "a "cease and desist" letter from Maron Pictures on January [30], 2010", which was purportedly acted upon by Mainsail in 2010. However, the Motion Picture was still being distributed/exported to Ireland, the U.K. and Europe by Defendants through their digital platforms based in California in violation of Plaintiff's

copyright 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5), 106(6), 501 and his moral rights. (Doc.16-4 at 56 [*Exh*. 29].) Plaintiff also made a commercial purchase from YouTube himself in 2016. (Doc.16-5 at 2 through 7 [*Exh*. 31].) This purchase also states "©2016 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066." (Doc.16-5 at 7.) Further, Defendants were still violating Plaintiff's copyright and his moral rights in 2019 (Doc.16-5 at 9, 10 [*Exh*. 32]) as is evidenced by a commercial purchase of same. (Doc.16-5 at 12 through 14 [*Exh*. 33].) Again, this purchase states "[©20]19 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066." (Doc.16-5 at 13.)

33.     In or around early ***December 2019, Plaintiff only got evidence for the first time via an official confirmation from Visual Data that his copyright protected Motion Picture masters had been unlawfully copied in the State of California at Visual Data contrary to 17 U.S.C. §§ 106 (1), 106 (2), 106 (5) and 501 without his consent*** (Doc.16-5 at 16, 17 [*Exh*. 34]; Doc.16-5 at 19 [*Exh*. 35]) and those counterfeit copies were acquired by numerous companies around the world, including Defendants, who have been commercially exploiting Plaintiff's copyright protected Motion Picture for several years under the continuing violation doctrine. (Doc.16-5 at 21, 22 [*Exh*. 36].) However, since these counterfeit copies were created in the State of California, and subsequent distribution deals were done with technology companies in California and the United States, including with Defendants, then extraterritoriality copyright infringement applies, as the copyrighted Motion Picture masters were 'records' from which the work could be 'reproduced', and it is a tort to make them in the United States. Previous circuit court rulings have also found that the copyright holder may recover damages that stem out of the country from a direct infringement of its exclusive rights that occurs within the United States. (Doc.16-2 at 4, 5 [*Exh*. 2]; Doc.34-4 at 1, 2.; Doc.16-2 at 31 [*Exh*. 6].)

34.     In or around December 12, 2019, Plaintiff then wrote to Defendants and informed them that they had infringed his Copyright and that he is entitled to recover his actual damages pursuant to Federal Copyright Law (17 U.S.C. § 504), which he required payment of. (Doc.16-5 at 24 through 36 [*Exh*. 37].) Plaintiff also attached a certified copy of his Certificate of Registration from the United States Copyright Office, PA 1-398-376, certified by Comyn, Kelleher, Tobin Solicitors and a letter from his Chartered Accountants and Registered Auditors,

11

SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

Moore, confirming his actual costs/damages of $8,753,310. (Doc.16-5 at 38 [*Exh*. 38].)

35. On January 2, 2020, YouTube Legal Support Team wrote to Plaintiff via email stating "[i]f you believe you hold the copyright to the content in question, you may wish to file a copyright complaint." (Doc.16-5 at 40 [*Exh*. 39].) However, the link could not be accessed.

36. On January 8th, 2020, Simon Osborn, Head of Legal and Business Affairs for Entertainment One wrote to Plaintiff and stated that "Entertainment One were granted all linear distribution rights, which included 'all means of download and streaming', in this film by way of an agreement with Mainsail LLC". He also confirmed that they authorized giving it to "Google and other digital platforms" and sought assurances that "no further action will be taken against these platforms". (Doc.16-5 at 42 [*Exh*. 40].)

37. On January 10th, 2020, Plaintiff wrote to Mr. Osborn and attached the 'Entertainment One Demand Letter', which was issued to Entertainment One Ltd. via their Santa Monica, California office, dated December 12th, 2019. Plaintiff also confirmed that copyright infringements lawsuits were being drafted against several companies including Entertainment One US LP for infringing his copyright. (Doc.16-5 at 44 through 46 [*Exh*. 41].) Apple Inc. also identified Entertainment One US LP in a separate complaint as the iTunes provider of the Film. (Doc.41 at 21.)

38. On January 24, 2020, Plaintiff tried to access the link that the YouTube Legal Support Team had provided him again, but it still could not be accessed. (Doc.16-5 at 48 [*Exh*. 42].) Plaintiff then wrote back to the YouTube Legal Support Team and noted that he had not heard back from them about his formal demand and asked for a direct contact in the YouTube legal team, as he still needed to be compensated for YouTube violating his copyright. (Doc.16-5 at 50 [*Exh*. 43].)

39. On January 26, 2020, YouTube Legal Support Team wrote back to Plaintiff with the exact same response that they had sent him via email on January 2, 2020. (Doc.16-5 at 52, 53 [*Exh*. 44].)

40. On March 2, 2020, Plaintiff filed a Complaint in the United States District Court, Northern District of California against Defendants for: (1) Copyright Infringement; (2)

12

Infringement of Right of the Author. (ECF 1.)

41. On March 24, 2020, a NOTICE of Appearance was filed by Graham Marc Buccigross on behalf of Defendants. (ECF 8.)

42. On March 24, 2020, Plaintiff filed an Amended Complaint against Defendants. (ECF 16.)

43. On April 15, 2020, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint under *F.R.C.P. 12(B)(6)*. (ECF 29.)

44. On April 23, 2020, the Case was reassigned to Hon. Judge Yvonne Gonzalez Rogers. (ECF 31.)

45. On April 29, 2020, Plaintiff filed Opposition to Defendants' Motion to Dismiss under *F.R.C.P. 12(B)(6)*. (ECF 34.)

46. On May 6, 2020, Defendants filed a Reply to Plaintiff's Opposition to Motion to Dismiss under *F.R.C.P. 12(B)(6)*. (ECF 35.)

47. On August 7, 2020, the Court issued an Omnibus Order with Defendants' motion to Dismiss GRANTED with leave for Plaintiff to amend his Complaint as to the first claim. Leave to amend was denied as to right of author claims, as any such amendment would be futile. (ECF 41.)

## FIRST CLAIM FOR RELIEF

**Copyright Infringement – 17 U.S.C. § 106, *et seq.***

**(Direct, Contributory Against All Defendants)**

48. Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 47 as though fully set forth herein.

49. Plaintiff, Mark Mahon, is the legal and beneficial owner of the copyright in an original work that is fixed in a tangible media of expression. Effective on March 8, 2006, the United States Copyright Office issued a copyright registration certificate for the original screenplay, STRENGTH AND HONOR to Plaintiff. It was assigned number TXul-289-556 by the Copyright Office. Effective on August 6, 2009, the United States Copyright Office issued a

13

SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

copyright registration certificate for his Motion Picture, STRENGTH AND HONOUR, having registration number PA 1-642-297. Effective on May 3, 2017, the United States Copyright Office issued a supplementary copyright registration certificate for his motion picture, STRENGTH AND HONOUR, to reflect that Plaintiff, Mark Mahon, is the registered author, writer, producer, feature director and owner of exclusive rights of the Copyright having registration number PA 1-398-376 at the U.S. Copyright Office.

50. Upon information, belief, proof and admission of use by Google LLC, Defendants have unlawfully produced, copied, reproduced, distributed, exported, sold for profit and publicly performed Plaintiff's copyright protected work and copied, reproduced, distributed, exported, counterfeit derivatives of Plaintiff's protected work that stemmed from the State of California and Visual Data as directed by Mainsail et al. Mainsail then provided the illicit/counterfeit copies to Entertainment One et al. who subsequently provided them to Defendants and/or other distributors in violation of Plaintiff's exclusive rights pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq*. On February 10, 2020, California-based Google identified Entertainment One at their North American office, as the Google provider of the Motion Picture but no real correspondence has been forthcoming from YouTube. Further, Plaintiff believes that Defendants violated his right to distribution and/or copying of the Motion Picture in California and/or in the United States, as they distributed/exported his Copyright protected Motion Picture through their digital platforms around the world from California. A purchase from YouTube in 2019 confirms the Copyright as being "[©20]19 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066[.]" Furthermore, where an act of infringement takes place in the United States and enables further exploitation abroad, Plaintiff may recover damages for extraterritorial exploitation. Alternatively, "exportation from the United States" of illicit/counterfeit copies of the Motion Picture "without the authority of the owner of copyright … is an infringement of the exclusive right to distribute copies under section 106, actionable under sections 501 and 506." 17 U.S.C. §602(a)(2). Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, copy, including but not limited to the individual images of the Motion Picture, distribute copies of his copyright protected work for their own

14

SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

profit, to make, copy or reproduce derivative works, distribute, export and sell the copyrighted Motion Picture without Plaintiff's consent, and to distribute/export it with a counterfeit cover and trailer from the United States throughout Ireland, the United Kingdom and Europe.

51. Defendants copied, distributed and exported copies of the unlawfully produced, copied, reproduced copies of Plaintiff's Motion Picture and counterfeit cover via YouTube and Google's digital distribution platforms from California under the continuing violation doctrine, where it was still available for purchase online in 2019 around the world.

52. Defendants' infringement has been undertaken with intent to financially gain from Plaintiff's copyright protected screenplay and copyright protected Motion Picture. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement, and they did so with intent to further their own financial interests with the infringement of Plaintiff, Mark Mahon's legal and beneficial rights as author, writer, producer, feature director and owner of exclusive rights of his screenplay 'STRENGTH AND HONOR' and his Motion Picture, 'STRENGTH AND HONO[U]R'. Accordingly, Defendants have directly and/or contributorily infringed Plaintiff's copyrighted work.

53. The above-described conduct by Defendants constitutes copyright infringement under the Copyright Act.

54. As a result of the above-described conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial and Plaintiff is entitled to his actual damages. Plaintiff submits his actual damages are $8,753,310 for his copyright infringed by Defendants.

55. Plaintiff is also entitled to recover from Defendants his costs and attorneys' fees per copyright infringed for Defendants' copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

56. For an Order that Defendants be required to pay over Plaintiff the actual damages suffered by Plaintiff as a result of the infringement of Plaintiff's copyright, exclusive rights and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of

15

the Copyright Act, as set forth in 17 U.S.C. § 504;

57. For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

58. For an award of attorneys' fees pursuant to 17 U.S.C. § 505 as Plaintiff will engage the services of counsel once the matter proceeds to trial;

59. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

60. For such other and further relief as the Court deems just and proper.

Dated: September 2, 2020

Respectfully submitted,

By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Telephone: + 353 87 742 4444

*Plaintiff Pro Se*

16

# **DEMAND FOR JURY TRIAL**

Plaintiff Mark Mahon hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

Dated: September 2, 2020

Respectfully submitted,

By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Tel: + 353 87 742 4444

*Plaintiff Pro Se*