1   Mark Mahon
2   movieman1000@live.com
    Mariners Rest,
3   Mariners View Avenue,
4   Passage West,
    Cork,
5   Ireland
6   Tel: + 353 87 742 4444

7   *Plaintiff Pro Se*

8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                          **OAKLAND DIVISION**

12

13   MARK MAHON, AN INDIVIDUAL,          CASE NO. 4:20-cv-01525-YGR

14              Plaintiff,               **OPPOSITION TO DEFENDANTS'**
                                         **MOTION TO DISMISS PLAINTIFF'S**
15        v.                             **SECOND AMENDED COMPLAINT**
                                         **PURSUANT TO FED. R. CIV. P. 12(b)(6)**
16   YOUTUBE LLC.; GOOGLE LLC, D/B/A
     YOUTUBE.; and DOES 1 - 12,          **DECLARATION OF MARK MAHON;**
17                                        **EXHIBITS 1 - 4**
                Defendants.
18

19                                       JUDGE: HON. YVONNE GONZALEZ ROGERS

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

Page(s)

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS…………………………....   1

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………   2

I.   INTRODUCTION……………………………………………………………………   2

   A. Preliminary Comments……………………………………………………………   2

II.  BACKGROUND…………...……………………………………………………………   3

III. LEGAL STANDARD……………………………………………………………………   4

IV. LEGAL ARGUMENT…………………………………………………………………....   4

   1.   The Copyright Infringement Claim Must Not Be Dismissed…………………….....   4

     A.  Plaintiff Owns the Copyright and is the Only Legal Owner in the World……....   7

   2.   Defendants' Motion seeks to have Plaintiff's Claim Dismissed for Failure to
     State a Claim but Ignores Facts in the Second Amended Complaint Supported
     by Evidence………………………………………….………………………………   8

   3.   Plaintiff's Second Amended Complaint has pleaded Facts to Support His Claim
     of Copyright Infringement and it Should Not Be Dismissed…………………….... 12

     A.  Plaintiff requests that since Defendants' motion to dismiss raises jurisdictional
     issues that it is in the Interests of Justice for Defendants to disclose Facts
     through Discovery, even in a Limited Discovery………..…………………………. 17

V.  CONCLUSION………………………………………………………………………… 18

1

# **TABLE OF AUTHORITIES**

2

## **Cases**

3

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)…………………. 4, 6, 7

4

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)……………………………………………….  4

5

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)……………………  4

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)………………………………………  4

7

*Butcher's Union Local No. 498 v. SDV Inv., Inc.*, 788 F.3d 535, 540 (9th Cir. 1986)…………  17

8

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)……………………………………………….  4

9

*Conservation Force v. Salazar*, 649 F.3d 1240, 1242 (9th Cir. 2011)…………………………  4

10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990)…….  4

11

*Famous Music Corporation v. Seeco Records, Inc.*, 201 F. Supp. 560, 568 (S.D.N.Y. 1961)…..  16

12

*Focht v. Sol Media S.A.,* 2010 WL 3155826, at *2 (N.D. Cal.  Aug. 9, 2010)…………………..  17

13

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)………………………  6

14

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)………………………………  4

15

*Goldberg v. Cameron,* 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007)…………………………  4

16

*Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2012)………………………………………...  17

17

*Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)……………………………  17

18

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)………...  4

19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions,* 591 F. Supp. 2d 1098,

20

1108 (N.D. Cal. 2008)………………………………………………………………………  6

21

*Los Angeles News Ser. v. Reuters Television I*, 149 F.3d 987 (9th Cir. 1998)…………………..  17

22

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 795 F.3d 997, 1002 (9th Cir. 2015)…………  5

23

*Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 386 (3d Cir. 1999)…………………………  6

24

*Orchid Biosciences, Inc. v. St. Louis University,* 198 F.R.D. 670, 673 (S.D. Cal. 2001)………..  17

25

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007)……………………..  4

26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)……………………………..  17

27

*Sheldon v. Metro-Goldwyn Pictures Corporation*, 106 F.2d 45, 52 (2d Cir. 1939)…………….  16

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1

# TABLE OF AUTHORITIES
**(continued)**

2

**Cases**

3

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)………………… 13

4

*Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)…………………… 17

5

6

**Statutes and Rules**

7

17 U.S.C. § 101……………………………………………………………………………. 2, 11

8

17 U.S.C. § 106…………………………………………………… 4, 5, 6, 8, 9, 11, 13, 15, 16

9

17 U.S.C. § 122……………………………………………………………………….... 5, 6

10

17 U.S.C. § 201……………………………………………………………………….... 5, 6

11

17 U.S.C. § 501……………………………………………………... 5, 6, 8, 9, 11, 13, 16

12

17 U.S.C. § 506………………………………………………………………….... 6, 11, 16

13

17 U.S.C. § 507……………………………………………………………………….. 17

17 U.S.C. § 602………………………………………………………………….... 6, 11, 16

14

Berne Convention Implementation Act of 1988………………………………………………  8

15

Fed. Civ. L. R. 3-12……………………………………………………………………... 15

16

Fed. Civ. L. R. 7-11……………………………………………………………………... 15

Fed. R. CIV.P. 12(b)(2)……………………………………………………………….... 14

17

Fed. R. CIV.P. 12(b)(6)………………………………………………………….... 1, 2, 3, 4

18

Fed. R. CIV.P. 15(a)(1)…………………………………………………………………....  3

19

Fed. R. CIV.P. 18…………………………………………………………………….. 17

20

21

**Treaty of the United States**

22

Berne Convention for the Protection of Literary and Artistic Works (1886)……………………  8

23

24

**Treatises**

3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12-150.4 (2013) ………….….…. 17

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1                                 **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

2                                       **PURSUANT TO FED. R. CIV.P. 12(b)(6)**

3         Plaintiff's opposition to Defendants' motion to dismiss is based on this opposition, the

4 Memorandum of Points and Authorities, and upon the papers, records, exhibits and pleadings on

5 file herein.

6         The Second Amended Complaint for Relief for Copyright Infringement, Direct and

7 Contributory does state a claim for which relief can be granted.

8         As set forth in the accompanying memorandum, the claim is not subject to dismissal.

9

10 Dated: October 7, 2020                         Respectfully submitted,

11

12                                       By: _____

13                                       Mark Mahon

14                                       *Plaintiff Pro Se*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Mark Mahon ("Plaintiff") respectfully submits Defendants YouTube LLC ("YouTube") and Defendant Google LLC, D/B/A YouTube ("Google")(collectively, "Defendants") motion to dismiss Plaintiff's Second Amended Complaint ("SAC")(Dkt.42) pursuant to 12(b)(6) for lack of personal jurisdiction (referred herein as "Dkt.44") be denied as their motion fails to meet the legal standard.

### A.  Preliminary Comments

This case is a Federal copyright infringement action issued pursuant to 17 U.S.C. §§ 101, *et seq*. The Plaintiff is the legal, beneficial owner, registered author and Copyright owner of the screenplay having registration no.TXul-289-556 at the United States Copyright Office (Dkt.16-2 at 31 [*Exh*. 6])[1], the legal and beneficial owner of the motion picture's Copyright having registration no. PA 1-642-297 at the U.S. Copyright Office (Dkt.34-4 at 1, 2) and the legal, beneficial owner, registered author, writer, producer, feature director and owner of the exclusive rights of the award-winning motion picture's Copyright for '*Strength and Honour*' (the "Motion Picture") having registration no. PA 1-398-376 at the U.S. Copyright Office. (Dkt.16-2 at 4, 5 [*Exh*. 2].)

While Defendants suggest that Plaintiff's "allegations remain primarily directed to third parties unconnected with Google" (Dkt.44 at 4, 22-23), the simple fact remains that Defendants were also infringing Plaintiff's copyright as evidenced by exhibits and records on file which included proof of Defendants selling his Motion Picture, proof of purchase of the Motion Picture, proof of receipts from said purchases from Defendants with their address listed as "YouTube, LLC  901 Cherry Ave, San Bruno, CA 94066" and evidence of payments going to "POS Google *YouT*" via bank statements too. (Dkt.16-5 at 14; Exhibit 1 hereto.) See also Declaration of Mark Mahon ("Decl.Mahon") ¶ 4) attached hereto. It also should be noted that Kathlyn Querubin, Litigation Counsel for Google LLC based in San Francisco, California acknowledged that

---

[1] Plaintiff refers to Exhibits ("*Exh*") attached to First Amended Complaint ("FAC")(Dkt.16) filed on March 24, 2020 in order to avoid doubling up on Exhibits in the SAC (Dkt.42), which are already part of the record. (ECF 16.)

2

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1    "Strength and Honor … was made available to Google for distribution" on February 10, 2020.

2    (Exhibit 2 hereto; Decl.Mahon ¶ 5.) In other words, Google LLC admitted that it was made

3    available to Google and indeed, Google were using it.

4         Further, Plaintiff's SAC (Dkt.42) is listed as "YouTube LLC.; Google LLC, D/B/A

5    YouTube; and DOES 1 – 12" but Defendants state that "Mahon mistakenly filed this against

6    YouTube LLC and "Google LLC doing business as YouTube." YouTube is not a d/b/a, but

7    rather, Google's wholly-owned subsidiary." (Dkt.44 at 5, 23-24.) However, Plaintiff has

8    previously provided evidence showing that in Ireland YouTube's platform is displayed under the

9    'Contact Us' section of their website as "Google LLC, D/B/A YouTube[,] 901 Cherry Ave.[,] San

10   Bruno, CA 94066[,] USA[.]" (Dkt.34-2 at 1.) Plaintiff also confirms that as of October 7, 2020 in

11   Ireland, their name is still listed as "Google LLC, D/B/A YouTube." (Decl.Mahon ¶ 7.)

12        While Plaintiff understands and appreciates why the Court dismissed Plaintiff's first

13   amended complaint (the "FAC"), Plaintiff respectfully submits that the SAC has cured the

14   deficiencies and the claim for relief is plausible on its face.

15   **II. BACKGROUND**

16        The Plaintiff filed a complaint in the above-captioned action against Defendants on March

17   2, 2020. (ECF 1.) On March 24, 2020, Plaintiff filed the FAC against Defendants as he had not

18   provided a declaration to certify the Exhibits attached to the Complaint as true and accurate. (ECF

19   16; Dkt.16.) Plaintiff had also asked Defendants if they would stipulate to permit him to amend

20   his Complaint to include a declaration but with no reply forthcoming and a deadline looming, he

21   filed the FAC to include same in a timely manner as permitted by Fed. R. Civ. P. 15(a)(1). On

22   April 15, 2020, Defendants' filed a motion to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P.

23   12(b)(6). (ECF 29.)

24        On August 7, 2020, this Court ruled on Defendants' motion to dismiss Plaintiff's first

25   amended complaint as part of an Omnibus Order (Dkt.41). The Court Granted Defendants'

26   motion to dismiss on both counts, with leave for Plaintiff to amend **granted** as to the first claim,

27   but not as to the second. (Dkt.41 at 26, 14-16.)

28        On September 2, 2020, Plaintiff filed the SAC against YouTube and Google and asserted

3

1   a claim for Copyright Infringement. (Dkt.42.)

2   **III. LEGAL STANDARD**

3       When considering a motion to dismiss under Rule 12(b)(6), a complaint may be

4   dismissed for failure to state a claim upon which relief may be granted. Dismissal under Rule

5   12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts

6   alleged under a cognizable legal theory." *Convervation Force v. Salazar*, 649 F.3d 1240, 1242

7   (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

8   The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face."

9   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the

10  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

11  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The

12  court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings*

13  *Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Further, "[a] complaint

14  should not be dismissed `unless it appears beyond doubt that the plaintiff can prove no set of facts

15  in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108

16  F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Goldberg v.*

17  *Cameron,* 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007) (same).

18      If a court dismisses a complaint, it should give leave to amend unless "the pleading could

19  not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

20  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

21  **IV. LEGAL ARGUMENT**

22      *1.   The Copyright Infringement Claim Must Not Be Dismissed*

23      To establish a case of copyright infringement, Plaintiff "must satisfy two requirements to

24  present a prima facie case of direct infringement: (1) [he or she] must show ownership of the

25  allegedly infringed material and (2) [he or she] must demonstrate that the alleged infringers

26  violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect*

27  *10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) (citing *A&M Records, Inc. v.*

28  *Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).

4

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

Section 106 provides, in pertinent part:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

However, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The "exclusive rights" in a copyright are enumerated at § 106 of the Act. They are the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.,* 795 F.3d 997, 1002 (9th Cir. 2015).

"Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to someone else. 17 U.S.C. § 201(d)(1)." *Minden Pictures, Inc.*, 795 F.3d at 1002.

Moreover, each exclusive right is further divisible and "any subdivision of any right specified by section 106, may be transferred ... and owned separately." 17 U.S.C. § 201(d)(2).

Section 201(d) refers to exclusive rights and provides:

> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

(2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and ***owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.*** (emphasis added)

"The right to transfer or license copyrighted material for use by others under sections 106 and 201 et seq. of the Copyright Act has never encompassed a right to transfer the work at all times and at all places free and clear of all regulation; it has meant that the copyright owner has the exclusive right to transfer the material for consideration to others." *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 386 (3d Cir. 1999).

For the avoidance of any doubt, Plaintiff refers to all his copyright certificates that he was issued by the United States Copyright Office for this screenplay and Motion Picture, which he is the only legal and beneficial owner of same. (Dkt.16-2 at 31 [*Exh*. 6]; Dkt.34-4 at 1, 2; Dkt.16-2 at 4, 5 [*Exh*. 2].)

17 U.S.C. § 501(a) provides for:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

"To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *A M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

"Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). "Contributory infringement "liability exists if the defendant engages in personal conduct that encourages or assists the infringement" activity." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions,* 591 F. Supp. 2d 1098, 1108 (N.D.

6

1   Cal. 2008)(citing *A M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1019 (9th Cir. 2001)).

2          Plaintiff's complaint and exhibits clearly show that he owns the copyright and that the

3   Defendants violated one or more of Plaintiff's exclusive rights under the Copyright Act, as

4   Plaintiff never assigned any rights to Defendants. Plaintiff's SAC also states its claim for direct

5   and contributory copyright infringement, and the evidence on record establishes these facts.

6               ***A.  Plaintiff Owns The Copyright and is the Only Legal Owner in the World***

7          Plaintiff assigned his rights in trust to Maron Pictures Ltd. ("MPL") under an 'Agreement

8   to Acquire Literary Material' (Doc.16-3 at 2 - 16 ) and an 'Agreement to Acquire Authorship

9   Rights' on September 25th, 2006. (Doc.16-3 at 18 - 28.) Plaintiff is also the sole, one hundred

10  percent (100%) owner, beneficiary and one hundred percent (100%) shareholder of his company,

11  MPL too. (Dkt.34-6 at 1; Dkt.34-7 at 1.)  However, in order for his rights to have been

12  permanently assigned to MPL, Plaintiff was due to be paid  €300,000.00 (Three Hundred

13  Thousand Euro) no later than the 30th day of September, 2015 and his rights did not become

14  permanently assigned until they were paid for. In the event of non-payment, Plaintiff had the right

15  to ***revoke***[2] all rights granted to MPL.[3] (Dkt.16-3 at 7, 8 ¶ ¶ 4, 5; Doc.16-3 at 21, 22 ¶¶ 3, 4.)

16  However, MPL could not perform because it was never paid any royalties as the Motion Picture

17  was being performed around the world and as a result, MPL could not pay Plaintiff. Accordingly,

18  Plaintiff revoked all his rights due to nonpayment on October 1, 2015 and notified MPL as his

19  agreements required him to do in accordance with laws of Ireland. (Dkt.16-3 at 7, 8 ¶ ¶ 4, 5;

20  Doc.16-3 at 21, 22 ¶¶ 3, 4; Doc.16-3 at 30, 31.) Accordingly, under the Assignment section of his

21  MPL agreements, the terms "shall be binding upon and inure to the benefit of the parties hereto

22  and their successors, representatives and assigns forever." (Dkt.16-3 at 13 ¶14; Doc.16-3 at 26 ¶

23  11.) Further, the counterfeit and unauthorized covers which Defendants were using, Plaintiff

24  through his company, MPL, had instructed for those counterfeit covers to be 'cease[d] and

25  desist[ed]' with back in 2010 and has sought the same ever since. (Dkt.16-4 at 14, 17.)

26  _____

27  [2] dictionary.law.com; revoke – to annul or cancel an act, particularly a statement, document or promise, as if it no longer existed. Thus, a person can revoke a will or revoke an offer to enter into a contract, and a government agency can revoke a license.

28  [3] MPL is organized under the laws of Ireland.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1    Furthermore, Plaintiff never "waive[d] his benefit of any provision of law known as the

2    "droit moral" or moral rights or any similar law in any country of the world". (Dkt.16-3 at 21 ¶

3    2.) (Dkt.16-3 at 30, 31.) So, the counterfeit covers which Plaintiff repeatedly asked to be removed

4    were not only a violation of Plaintiff's copyright pursuant to 17 U.S.C. §§ 106(5) but also the

5    'Berne Convention Implementation Act of 1988' and Berne Convention for the Protection of

6    Literary and Artistic Works (1886), which the United States is a signatory of, as these rights were

7    never assigned to any individual, party, corporate, associate, entity or otherwise **_ever_**, so were not

8    subject to any agreement.

9    However, in or around early December, 2019, Plaintiff only got evidence for the first time

10   via an official confirmation from Visual Data that his copyright protected Motion Picture masters

11   had been unlawfully copied in the State of California at Visual Data Media Services, Inc. ("Visual

12   Data") contrary to 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5), 501 and without

13   Plaintiff's consent. (Dkt.16-5 at 16, 17, 19, 21, 22.) Furthermore, Plaintiff received an email only

14   on April 8, 2020 from Visual Data confirming that Mainsail[4] / Shoreline Entertainment gave

15   Visual Data their instructions to copy Plaintiff's copyright protected masters, which Plaintiff

16   never authorized. (Dkt.34-8 at 1.) However, "those counterfeit copies were acquired by numerous

17   companies around the world, including Defendants, who have been commercially exploiting and

18   infringing Plaintiff's copyright protected Motion Picture under the continuing violation doctrine."

19   (Dkt.42 at 11 ¶ 33, 12-14.)

20       ***2. Defendants' Motion Seeks to have Plaintiff's Claim Dismissed for Failure to State a***

21       ***Claim But Ignores Facts in the Second Amended Complaint Supported by Evidence***

22   Defendants state "Mahon alleges the same set of facts that this Court has already

23   determined do not state a claim for relief. Indeed, the SAC relies on the **same exhibits** as the

24   deficient FAC[.]" (Dkt.44 at 6, 10-12.) Defendants continue and concede "receipts evidencing the

25   rental and purchase of the Film on YouTube, which state "©2016 YouTube, LLC Cherry Ave,

26   San Bruno, CA 94066"… and that the payment was processed in Ireland by "Google Commerce

27

28   [4] Case no. 4:20-cv-01523-YGR names as defendants Mainsail LLC.; Shoreline Entertainment, Inc.; Sam Eigen; and
     Morris Ruskin (referred herein as "Mainsail").

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

1  Limited, Attn: YouTube Paid Service[.]" (Dkt.44 at 8, 5-9.) However, Defendants acknowledged

2  that the invoices show the copyright and the address listed as "YouTube, LLC Cherry Ave, San

3  Bruno, CA 94066". While Plaintiff acknowledges that the payment in 2016 was "processed" by a

4  company called Google Commerce Limited, this does not mean that they were the ultimate

5  beneficiaries as his bank statement clearly shows that "POS Google *YouT" is the beneficiary.

6  (Exhibit 1 hereto; Decl.Mahon ¶ 4; Dkt.16-5 at 14.) The 2019 receipt does not state who

7  processed the payment and *only* shows YouTube in California. (Exhibit 3 hereto.) It also should

8  be noted that in Ireland YouTube is displayed under the Contact Us section as "Google LLC,

9  D/B/A YouTube[,] 901 Cherry Ave[,] San Bruno, CA 94066[,] USA[.]" (Dkt.34-2 at 1.), which

10  shows they are running their technology platform via California. (Decl.Mahon ¶ 7.)

11         Nevertheless, Defendants also ignore the SAC clearly states a claim that is plausible on its

12  face on nine occasions as follows:

13     1. "However, the Motion Picture was still being distributed/exported to Ireland, the U.K.

14        and Europe by Defendants through their digital platforms based in California in

15        violation of Plaintiff's copyright 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5),

16        106(6), 501 and his moral rights. (Doc.16-4 at 56 [*Exh.* 29].) Plaintiff also made a

17        commercial purchase from YouTube himself in 2016. (Doc.16-5 at 2 through 7 [*Exh.*

18        31].) This purchase also states "©2016 YouTube, LLC  901 Cherry Ave, San Bruno,

19        CA 94066." (Doc.16-5 at 7.) Further, Defendants were still violating Plaintiff's

20        copyright and his moral rights in 2019 (Doc.16-5 at 9, 10 [*Exh.* 32]) as is evidenced

21        by a commercial purchase of same. (Doc.16-5 at 12 through 14 [*Exh.* 33].) Again, this

22        purchase states "[©20]19 YouTube, LLC  901 Cherry Ave, San Bruno, CA 94066."

23        (Doc.16-5 at 13.)" (Dkt.42 at 10, 11, ¶ 32, 27-28; 1-5.)

24     2. "In or around early ***December 2019, Plaintiff only got evidence for the first time via***

25        ***an official confirmation from Visual Data that his copyright protected Motion***

26        ***Picture masters had been unlawfully copied in the State of California at Visual***

27        ***Data contrary to 17 U.S.C. §§ 106 (1), 106 (2), 106 (5) and 501 without his consent***

28        (Doc.16-5 at 16, 17 [*Exh.* 34]; Doc.16-5 at 19 [*Exh.* 35]) and those counterfeit copies

9

1    were acquired by numerous companies around the world, including Defendants, who

2    have been commercially exploiting Plaintiff's copyright protected Motion Picture for

3    several years under the continuing violation doctrine. (Doc.16-5 at 21, 22 [*Exh*. 36].)

4    However, since these counterfeit copies were created in the State of California, and

5    subsequent distribution deals were done with technology companies in California and

6    the United States, including with Defendants, then extraterritoriality copyright

7    infringement applies, as the copyrighted Motion Picture masters were 'records' from

8    which the work could be 'reproduced', and it is a tort to make them in the United

9    States. Previous circuit court rulings have also found that the copyright holder may

10   recover damages that stem out of the country from a direct infringement of its

11   exclusive rights that occurs within the United States. (Doc.16-2 at 4, 5 [*Exh*. 2];

12   Doc.34-4 at 1, 2.; Doc.16-2 at 31 [*Exh. 6*].)" (Dkt.42 at 11, ¶ 33, 8-22.)

13   3.   "On January 8th, 2020, Simon Osborn, Head of Legal and Business Affairs for

14   Entertainment One wrote to Plaintiff and stated that "Entertainment One were granted

15   all linear distribution rights, which included 'all means of download and streaming',

16   in this film by way of an agreement with Mainsail LLC". He also confirmed that they

17   authorized giving it to "Google and other digital platforms" and sought assurances

18   that "no further action will be taken against these platforms". (Doc.16-5 at 42 [*Exh*.

19   40].)" (Dkt.42 at 12, ¶ 36, 5-10.)

20   4.   "Plaintiff also confirmed that copyright infringement lawsuits were being drafted

21   against several companies including Entertainment One US LP for infringing his

22   copyright. (Doc.16-5 at 44 through 46 [*Exh*. 41].)" (Dkt.42 at 12, ¶ 37, 13-15.)

23   5.   "Plaintiff, Mark Mahon, is the legal and beneficial owner of the copyright in an

24   original work that is fixed in a tangible media of expression. Effective on March 8,

25   2006, the United States Copyright Office issued a copyright registration certificate for

26   the original screenplay, STRENGTH AND HONOR to Plaintiff. It was assigned

27   number TXul-289-556 by the Copyright Office. Effective on August 6, 2009, the

28   United States Copyright Office issued a copyright registration certificate for his

10

1   Motion Picture, STRENGTH AND HONOUR, having registration number PA 1-642-

2   297. Effective on May 3, 2017, the United States Copyright Office issued a

3   supplementary copyright registration certificate for his motion picture, STRENGTH

4   AND HONOUR, to reflect that Plaintiff, Mark Mahon, is the registered author, writer,

5   producer, feature director and owner of exclusive rights of the Copyright having

6   registration number PA 1-398-376 at the U.S. Copyright Office." (Dkt.42 at 13, 14 ¶

7   49, 24-28; 1-6.)

8   6.  "Upon information, belief, proof and admission of use by Google LLC, Defendants

9   have unlawfully produced, copied, reproduced, distributed, exported, sold for profit

10   and publicly performed Plaintiff's copyright protected work and copied, reproduced,

11   distributed, exported, counterfeit derivatives of Plaintiff's protected work that

12   stemmed from the State of California and Visual Data as directed by Mainsail et al.

13   Mainsail then provided the illicit/counterfeit copies to Entertainment One et al. who

14   subsequently provided them to Defendants and other distributors in violation of

15   Plaintiff's exclusive rights pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq*."

16   (Dkt.42 at 14, ¶ 50, 7-13.)

17   7.  "On February 10, 2020, California-based Google identified Entertainment One at their

18   North American office, as the Google provider of the Motion Picture but no real

19   correspondence has been forthcoming from YouTube. Further, Plaintiff believes that

20   Defendants violated his right to distribution and/or copying of the Motion Picture in

21   California and/or in the United States, as they distributed/exported his Copyright

22   protected Motion Picture through their digital platforms around the world from

23   California. A purchase from YouTube in 2019 confirms the Copyright as being

24   "[©20]19 YouTube, LLC  901 Cherry Ave, San Bruno, CA 94066[.]" Furthermore,

25   where an act of infringement takes place in the United States and enables further

26   exploitation abroad, Plaintiff may recover damages for extraterritorial exploitation.

27   Alternatively, "exportation from the United States" of illicit/counterfeit copies of the

28   Motion Picture "without the authority of the owner of copyright … is an infringement

11

1    of the exclusive right to distribute copies under section 106, actionable under sections

2    501 and 506." 17 U.S.C. §602(a)(2).  Defendants' acts violate Plaintiff's exclusive

3    rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's

4    exclusive rights to produce, reproduce, copy, including but not limited to the

5    individual images of the Motion Picture, distribute copies of his copyright protected

6    work for their own profit, to make, copy or reproduce derivative works, distribute,

7    export and sell the copyrighted Motion Picture without Plaintiff's consent, and to

8    distribute/export it with a counterfeit cover and trailer from the United States

9    throughout Ireland, the United Kingdom and Europe." (Dkt.42 at 14, 15 ¶ 50, 14-28;

10   1-3.)

11       8.   "Defendants copied, distributed and exported copies of the unlawfully produced,

12           copied, reproduced copies of Plaintiff's Motion Picture and counterfeit cover via

13           YouTube and Google's digital distribution platforms from California under the

14           continuing violation doctrine, where it was still available for purchase online in 2019

15           around the world." (Dkt.42 at 15, ¶ 51, 4-7.)

16       9.   "Defendants' infringement has been undertaken with intent to financially gain from

17           Plaintiff's copyright protected screenplay and copyright protected Motion Picture.

18           Defendants have failed to exercise their right and ability to supervise persons within

19           their control to prevent infringement, and they did so with intent to further their own

20           financial interests with the infringement of Plaintiff, Mark Mahon's legal and

21           beneficial rights as author, writer, producer, feature director and owner of exclusive

22           rights of his screenplay 'STRENGTH AND HONOR' and his Motion Picture,

23           'STRENGTH AND HONO[U]R'. Accordingly, Defendants have directly and/or

24           contributorily infringed Plaintiff's copyrighted work." (Dkt.42 at 15, ¶ 52, 8-15.)

25   ***3.   Plaintiff's Second Amended Complaint has pleaded Facts to Support His Claim of***

26   ***Copyright Infringement and It Should NOT be Dismissed***

27       Defendants state that the bulk of "allegations set forth in the SAC relate to third parties –

28   primarily Mainsail and Entertainment One – unconnected to Google." (Dkt.44 at 9, 11-13.)

12

1    However, undesirable the situation may be for Defendants, copyright infringement is still illegal.

2    The simple fact is Plaintiff did not give Defendants consent to use his Motion Picture.

3        Defendants continue to "state a claim for copyright infringement, Mahon must plead facts

4    demonstrating (1) ownership of a valid copyright, and (2) copying of constituent elements of the

5    work that are original." (Dkt.44 at 9, 18-20.) However, Defendants have their heads in the sand

6    conveniently ignoring that Plaintiff's United States Copyright Certificates are already on record,

7    which show Plaintiff is the legal and beneficial owner of same. For the avoidance of any doubt,

8    Plaintiff refers to all his copyright certificates that were issued by the United States Copyright

9    Office for his screenplay and Motion Picture. (Dkt.16-2 at 4, 5 [*Exh.* 2]; Dkt.34-4 at 1, 2.; Dkt.16-

10   2 at 31 [Exh. 6].) Under the Copyright Act, only the "legal" or "beneficial owner" of an exclusive

11   right under a copyright may bring an action for infringement of that right. 17 U.S.C. § 501(b);

12   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).

13       However, Defendants completely disregard that Plaintiff presented prima facie evidence

14   with the FAC, which Plaintiff refers to in the SAC. (Dkt.42 at 4, 28.) The clear evidence provided

15   also establishes that Defendants were selling Plaintiff's copyright protected work and at a

16   minimum, were infringing Plaintiff's copyright in relation to 17 U.S.C. §106(5) as the cover

17   images Defendants were using were never authorized by Plaintiff. (Dkt.16-2 at 4, 5, 31; Dkt.16-4

18   at 56; Dkt.16-5 at 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 29, 30, 31, 32, 33, 34, 35, 36.)

19       Further, Plaintiff solely owns the Copyright of the Motion Picture. (Dkt.16-2 at 4, 5 [*Exh.*

20   2]; Dkt.31-3 at 1, 2.; Dkt.16-2 at 31 [Exh. 6].) Plaintiff never assigned any right to Defendants to:

21   -    (1) to reproduce the copyrighted work in copies or phonorecords, as defined by 17
22        U.S.C. § 106 (1).

23   -    (2) to prepare derivative works based upon the copyrighted work, , as defined by 17
         U.S.C. § 106 (2).
24
25   -    (3) to distribute copies or phonorecords of the copyrighted work to the public by sale
         or other transfer of ownership, or by rental, lease, or lending, , as defined by 17
26        U.S.C. § 106 (3).

27   -    (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes,
         and motion pictures and other audiovisual works, to perform the copyrighted work
28        publicly, as defined by 17 U.S.C. § 106 (4).

13

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

- (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and , as defined by 17 U.S.C. § 106 (5).

So, while Defendants may conclude that Plaintiff allegations "are conclusory and establish no connection between Google and any purported infringing act" (Dkt.44 at 10, 2-3), this is simply because Plaintiff never transferred any rights to Defendants, *__ever__*.

Defendants continue "Mahon tries to gin up a connection between Google and the United States, alleging that Google "identified Entertainment One at their **North America** office, as the Google provider of the Motion Picture."" (Dkt.44 at 10, 10-13.)(Exhibit 2 hereto; Decl.Mahon ¶ 5.) At this point with their motion to dismiss for failure to state a claim sounding more like it should have been filed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Defendants carry on "[m]ere evidence that the Film may have been available in Europe does not support Mahon's claim that Google infringed his copyright by exporting the Film from the United States." (Dkt.44 at 10-11, 26; 1-2.) However, Plaintiff also filed a proof of purchase that Plaintiff made directly from Defendants in Ireland on October 27, 2016 (Dkt.16-5 at 2, 3, 4, 5, 6, 7) and on January 2, 2019. (Dkt.16-5 at 9, 10, 12, 13, 14.) The purchase on October 27, 2016 clearly shows a YouTube receipt (Dkt.16-5 at 5 - 7) and that the Motion Picture rented was '*Strength and Honour*'. Further, the receipt shows that the Copyright clearly states "© 2016 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066." (Dkt.16-5 at 7.) The receipt also confirms that the payment "was processed by Google Commerce Limited, Attn: YouTube Paid Services, Gordon House, Barrow Street, Dublin 4, Ireland." (Dkt.16-5 at 7.) However, this only confirms that the payment was processed through Ireland, not where the payment ended up. Plaintiff's Irish bank statement clearly shows the payment went to "POS Google *YouT 28/10 2" on November 2, 2016. (Exhibit 1 hereto; Decl.Mahon ¶ 4. )

The purchase on January 2, 2019 clearly shows a YouTube receipt (Dkt.16-5 at 12 - 13) and that the Motion Picture rented was '*Strength and Honour*'. The receipt also shows that the Copyright clearly states "© 2019 YouTube, LLC  901 Cherry Ave, San Bruno, CA 94066." (Dkt.16-5 at 13.) Plaintiff organized a landscape version as the "©20" was cropped in the exhibit

14

1    on record. (Exhibit 3 hereto.) However, this receipt does not show where the payment was

2    processed but Plaintiff's bank statement shows the payment was paid directly to "POS Google

3    *YouT 03/01 2" on January 7, 2019. (Dkt.16-5 at 14.) It also should be noted that in another case

4    that is before this court too, Case no. 4:20-cv-01530-YGR, which names Alphabet Inc.; Google

5    LLC.; Google Play; and Does 1-13, Plaintiff's bank recorded a purchase of his Motion Picture in

6    or around the same time in 2019 to "GOOGLE *Google" as an "International Purchase".

7         Further,  Plaintiff previously provided evidence showing that in Ireland YouTube is

8    displayed under the Contact Us section as "Google LLC, D/B/A YouTube[,] 901 Cherry Ave.[,]

9    San Bruno, CA 94066[,] USA[.]" which also shows that their technology platform is run via

10   California. (Dkt.34-2 at 1.)

11        Plaintiff also confirms that he never authorized the cover that Defendants are selling his

12   Motion Picture with as Plaintiff never assigned these rights to MPL or any individual, party,

13   corporate, associate, entity or otherwise *ever*, and Defendants are indeed, infringing his copyright.

14   (Dkt.16-5 at 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 29, 30, 31, 32, 33, 34, 35, 36.) However, only in

15   another lawsuit that is before this court too, Case no. 4:20-cv-01523-YGR, which was deemed

16   related to this case pursuant to Civil L.R. 3-12 and 7-11 on 04/22/20, the defendants in that matter

17   *Mainsail LLC* et al. also filed a declaration on 04/07/20 confirming that they were "authorized to

18   represent the Film in territories outside the Unites [sic] [States] and Ireland and never represented

19   the Film in either the United States or Ireland." (Dkt.34-9 at 1.) While Defendants may claim that

20   the "allegations set forth in the SAC relate to third parties - primarily Mainsail and Entertainment

21   One - unconnected to Google" (Dkt.44 at 9, 10-12) this still does not change the fact that

22   Defendants were also exploiting Plaintiff's Motion Picture without his consent and indeed,

23   infringing his copyright by distributing and exporting his Motion Picture publicly with a cover

24   that he never authorized and is contrary to 17 U.S.C. § 106(5).

25        Further, in another related case, Case no. 4:20-cv-01534-YGR[5], Apple Inc. specifically

26   identified that Entertainment One U.S. LP[6] – a Delaware Corporation provided the Motion

---

[5] This action names as defendants Apple Inc.; Apple Inc. D/B/A iTunes; Apple Inc. D/B/A iTunes Store; and Apple Distribution International Ltd. (referred herein as "Apple").

[6] Case no. 4:20-cv-01527-YGR names as defendants Entertainment One US LP; Entertainment One Licensing US,

1  Picture to them, so it is also plausible that they also provided it to other technology companies in

2  California, especially since Kathlyn Querubin of Google LLC based in San Francisco confirmed

3  that "it was made available to Google for distribution under license from Entertainment One."

4  Ms. Querubin also referred Plaintiff to Entertainment One in North America. (Exhibit 2 hereto;

5  Decl.Mahon ¶ 5.) The two things that are telling about this email, is Ms. Querubin did not refer

6  Plaintiff to Entertainment One U.K. Ltd. and she also confirmed that it was made available to

7  "Google" (Exhibit 2 hereto; Decl.Mahon ¶ 5) and Google LLC were using it.

8       While Defendants may think that they have a free pass for jurisdictional reasons, it does

9  not as 1. the Motion Picture masters were copied in Los Angeles without Plaintiff's consent

10  contrary to 17 U.S.C. §§ 106(1), 106(2), 106(4) and 106(5) and 2. previous circuit court rulings

11  have found that the copyright holder may recover damages that stem from a direct infringement

12  of its exclusive rights that occurs within the United States. *Sheldon v. Metro-Goldwyn Pictures*

13  *Corporation*, 106 F.2d 45, 52 (2d Cir. 1939) (L. Hand, Judge.) ("The [copyrighted motion

14  picture] negatives were 'records' from which the work could be 'reproduced', and it was a tort to

15  make them in this country. The defendants acquired an equitable interest in them as soon as they

16  were made, which attached to any profits from their exploitation. . . ."), aff'd, 309 U.S. 390

17  (1940); *Famous Music Corporation v. Seeco Records, Inc.*, 201 F. Supp. 560, 568-69 (S.D.N.Y.

18  1961). In these cases, liability is not based on contributory infringement, but on the theory that the

19  infringing use would have been actionable even if the subsequent foreign distribution that

20  stemmed from that use never took place. Furthermore "exportation from the United States" of

21  counterfeit copies of the Motion Picture "without the authority of the owner of copyright… is an

22  infringement of the exclusive right to distribute copies under section 106, actionable under

23  sections 501 and 506." 17 U.S.C. § 602(a)(2).

24       "It is well established that copyright laws generally do not have extraterritorial

25  application. There is an exception – when the type of infringement permits further reproduction

26  abroad – such as the unauthorized manufacture of copyrighted material in the United States."

27  *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). *See also Los Angeles*

28  Inc.; Entertainment One Ltd.; and Entertainment One UK Ltd. (referred to herein as "Entertainment One").

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR

*News Ser. v. Reuters Television I*, 149 F.3d 987 (9th Cir. 1998) (Finding that plaintiff was "entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants").

"Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. *See* 3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p.  12-150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously."). Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement ( i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)

**A.  Plaintiff requests that since Defendants' motion to dismiss raises jurisdictional issues that it is in the interests of Justice for Defendants to disclose Facts through Discovery, even if in a Limited Discovery.**

A court "is vested with a broad discretion to permit or deny discovery." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2012)). "Discovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub*, 342 F.3d at 1093 (9th Cir. 2003); *see also Butcher's Union Local No. 498 v. SDV Inv., Inc.*, 788 F.3d 535, 540 (9th Cir. 1986). A plaintiff need only establish a "colorable basis" for personal jurisdiction in order to provide a reason for the court to permit jurisdictional discovery. *See Orchid Biosciences, Inc. v. St. Louis University,* 198 F.R.D. 670, 673 (S.D. Cal. 2001); *see also Focht v. Sol Media S.A.,* 2010 WL 3155826, at *2 (N.D. Cal.  Aug. 9, 2010) ("the fact that the Ninth Circuit has adopted a prima facie standard in deciding the merits of the jurisdiction issue indicates that a lesser showing is required in order for plaintiff to obtain jurisdictional discovery in the first place").

Plaintiff believes that at a minimum he has established a colorable basis for even a limited

17

1    discovery[7] if the Court requires further clarification, since Plaintiff's bank statements recorded

2    payment directly to "POS Google *YouT" for the rental of his Motion Picture from Ireland in

3    2019 (Dkt.16-5 at 14) and the receipt in 2019 only displays Defendants address as "YouTube

4    LLC[,] 901 Cherry Ave.[,] San Bruno, CA 94066[,] USA[.]" (Dkt.16-5 at 12-13; Exhibit 3 hereto;

5    Decl.Mahon ¶ 6.) Evidence also supports that the YouTube platform in Ireland is run directly

6    from California. (Dkt.34-2; Exhibit 4 hereto; Decl.Mahon ¶ 7.) Further, Kathlyn Querubin,

7    Litigation Counsel for Google LLC based in San Francisco, California acknowledged that

8    "Strength and Honor … was made available to Google for distribution" on February 10, 2020.

9    (Exhibit 2 hereto; Decl.Mahon ¶ 5.) In other words, Google LLC admitted to using it.

10           Further, once discovery has been concluded with this action and in another lawsuit that is

11   before this court too, Case no. 4:20-cv-01530-YGR, which names Alphabet Inc.; Google LLC.;

12   Google Play; and Does 1-13; Plaintiff will seek leave from the Court to consolidate both cases

13   pursuant to Fed. R. Civ. P. 18.

14   **V. CONCLUSION**

15           For the foregoing reasons, Defendants motion to dismiss for failure to state a claim should

16   be denied.

17

18   Dated: October 7, 2020                                    Respectfully submitted,

19

20                                                             By:

21                                                                Mark Mahon

                                                                  movieman1000@live.com

22                                                                Mariners Rest,

                                                                  Mariners View Avenue,

23                                                                Passage West,

24                                                                Cork,

                                                                  Ireland

25                                                                Telephone: + 353 87 742 4444

26

                                                               *Plaintiff Pro Se*

27

28   [7] On September 2, 2020 and September 3, 2020, Plaintiff served Jurisdictional Discovery requests on Entertainment One as per Omnibus Order (ECF 41), which Plaintiff is still currently waiting to receive.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
CASE NO. 4:20-CV-01525-YGR