# MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711

mayerbrown.com

**A. John P. Mancini**
Partner
T: +1 212 506 2295
F: +1 212 849 5895
JMancini@mayerbrown.com

May 5, 2023

**VIA ECF**

Hon. Magistrate Judge Laurel Beeler
San Francisco Courthouse, Courtroom B
15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

> *Re:*   *Mahon v. Mainsail LLC et al.*, No. 4:20-cv-01523; *Mahon v. YouTube, LLC et al.*, No. 4:20-cv-01525 (N.D. Cal.); *Mahon v. Apple Inc. et al.*, No. 4:20-cv-01534 (N.D. Cal.) – **Discovery Letter Brief**

To the Hon. Magistrate Judge Beeler:

Pursuant to Your Honor's Standing Order, Mainsail LLC ("Mainsail"), Google LLC and its wholly owned subsidiary YouTube, LLC (collectively, "Google"), and Apple Inc. ("Apple") (collectively, "Defendants") and Plaintiff Mark Mahon jointly submit this letter-brief regarding their dispute about Plaintiff's failure to preserve evidence.

Since April 19, 2023, Defendants have sought to meet and confer with Plaintiff on this issue, but Plaintiff refused. Accordingly, Defendants sought an order from this Court compelling Plaintiff to meet and confer. *See, e.g.*, No. 4:20-cv-01525, Dkt. 123. Plaintiff did, however, agree to join in this letter.[1] To avoid duplication, Defendants coordinated their meet and confer efforts and submit this letter jointly.

---

[1] As of May 5, 2023 at 8:28pm ET, this letter-brief was 5 pages, which included the insert that Plaintiff provided Defendants as of 9:05am ET on May 5. Plaintiff represented to Defendants at 8:54pm ET that he had "just a small few amendments." At 9:42pm ET, Plaintiff emailed back to Defendants a letter that, with his revised portion, was half a page over the limit. Given the filing deadline, there was not sufficient time for Defendants to further amend their portion of the letter. Plaintiff would agree to file this letter jointly only with the insert that he sent at 9:42pm ET. In addition, Plaintiff's consent to file this letter jointly was conditioned on Defendants' filing it with exhibits that well exceed 15 pages.

Sincerely,[2]

/s/ Mark Mahon
Mark Mahon
Plaintiff, Pro se

/s/ A John P. Mancini
A. JOHN P. MANCINI
MAYER BROWN LLP
*Attorney for Defendants YouTube LLC and Google LLC*

/s/ David E. Eberhart
David E. Eberhart
O'MELVENY & MYERS LLP
*Attorney for Apple Inc.*

/s/ Richard L. Charnley
Richard L. Charnley
CHARNLEY RIAN LLP
*Attorney for Mainsail LLC*

---

[2] Pursuant to Civil Local Rule 5-1(h)(3), the filer of this document attests that concurrence in the filing has been obtained by all signatories.

**Issue:** This dispute concerns Plaintiff's admitted destruction of evidence that goes to the heart of his case against Defendants: after determining that he would sue Defendants, Plaintiff destroyed two agreements that are the basis for his alleged ownership of the asserted copyrights. Plaintiff alleges that Defendants infringed "his" copyrights in the film *Strength and Honour* (the "Film") because Defendants were not validly licensed to offer the Film. But Defendants contend that Plaintiff's wholly-owned company, Maron Pictures Ltd. ("Maron Pictures"), entered into a series of agreements that licensed Defendants to offer the Film. Accordingly, a key dispute is whether Plaintiff "revoked" Maron Pictures' rights to the Film and reclaimed those rights for himself personally in October 2015, such that any subsequent distribution of the Film by Defendants constitutes infringement. *See, e.g.*, No. 4:20-cv-01525, Dkt. 42 ¶ 28.

Plaintiff alleges that he assigned "his rights" in the film—including copyrights—to Maron Pictures on September 25, 2006 by entering into an "Agreement to Acquire Literary Material" and an "Agreement to Acquire Authorship Rights" (collectively, the "Assignment Agreements"). *See id*. Plaintiff also alleges that the Assignment Agreements entitled him to receive a €300,000 payment by September 30, 2015, and that if he did not receive it, he "had the right to revoke all rights granted to Maron Pictures." *Id.* The Assignment Agreements, which Plaintiff attached to his First Amended Complaint ("FAC"), provide that the €300,000 consideration for the assignment was "payable in accordance with the terms of the related Production, Finance and Distribution Agreement ['PFDA'] and Share Purchase Agreement ['SPA']." *Id*. Dkt. 16-3 at 7-8, 21-22. Thus, the PFDA and the SPA, along with the performance or non-performance of their terms, sit at the heart of Plaintiff's ability to bring this copyright infringement lawsuit.

The Court granted Defendants' motion to compel the production of the PFDA and SPA, given that these agreements are directly relevant to Mahon's claims that he: (i) revoked the rights granted to Maron Pictures, such that Defendants did not have a valid license to offer the Film; and (ii) owns the copyrights in the Film, such that he has standing to maintain these actions. *See id.* Dkt. 118; *see also id.* Dkts. 105, 108. After initially refusing to produce the PFDA and SPA primarily on the ground that they are "voided" and "inapplicable," Plaintiff eventually admitted that these documents "were . . . disposed of" in 2021, along with approximately 20 boxes of other materials belonging to Maron Pictures and related entities. Dkt. 107-2 ¶ 6; Ex. A at 185:3-24; 188:22-189:12.

**Defendants' Position**: Because Defendants seek spoliation sanctions based on the loss of non-ESI evidence, the Court has discretion under its inherent authority to issue sanctions. *Mannion v. Ameri-Can Freight Sys. Inc*., 2020 WL 417492, *6 (D. Ariz. 2020). "[S]anctions may issue when the aggrieved party shows that **(1)** the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, **(2)** the destruction or loss was accompanied by a culpable state of mind, and **(3)** the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Clear-View Techs. v. Rasnick*, 2015 WL 2251005, *7 (N.D. Cal. 2015).

First, the PFDA and SPA—agreements entered into by Maron Pictures—were in Plaintiff's control. Plaintiff testified under oath in a state-court proceeding: "I am Maron Pictures. That's probably the best way of putting it." Ex. B at 35:9-10. Accordingly, Plaintiff had control of the PFDA and SPA. *See, e.g.*, *Inland Concrete Enters. v. Kraft Ams.*, 2011 U.S. Dist. LEXIS 162794,

1

\*8-9 (C.D. Cal. 2011) ("[A]n individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which [he] is an officer, director or shareholder.").[3]

Next, Plaintiff destroyed the PFDA and SPA *during this litigation*, meaning he was undoubtedly under an obligation to preserve them. Moreover, the duty to preserve "extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Herson v. City of Richmond*, 2011 WL 3516162, \*2 (N.D. Cal. 2011) (Beeler, J.). Plaintiff testified that, by October 2015, he was aware that Apple, Google, and YouTube were offering the Film on their platforms. Ex A at 151:10-25; 218:4-13; Ex. C (Mahon letter stating "I will now go about commencing litigation . . . against every other legal entity . . . that have and continue to profit from my Copyrighted work . . . including . . . Apple, Google . . . [and] YouTube."). At this point, Plaintiff should reasonably have anticipated litigation against Defendants. *See* Ex. C at 2. Plaintiff also testified that, by at least July 2016, he was gathering evidence for anticipated litigation against Apple and Google. Ex. A at 154:1-157:1; 219:13-221:18. Plaintiff's obligation to preserve all "*potentially* relevant" documents arose by 2015, and no later than 2016. *Leon v. IDX Sys. Corp*., 464 F.3d 951, 959 (9th Cir. 2006).

Second, Plaintiff's spoliation occurred with a culpable mindset for several reasons. A party has a culpable mindset when it, among other things, "not only [] t[ook] no reasonable steps to preserve relevant evidence, but [] also affirmatively destroyed it." *Clear-View*, 2015 WL 2251005, \*8. Most importantly, Plaintiff affirmatively destroyed documents. Defendants sought the PFDA and SPD in discovery as of ***August, 2021***. *See* No. 4:20-cv-1534, Dkt. 105-2 Ex. A. Plaintiff testified that the PFDA and SPA were destroyed in 2021, because "when there was no objections" to his discovery responses to Apple, "they were obviously disposed of." Ex. A at 178:11-13; 178:18-179:4; 179:20-22.[4] Nor was Plaintiff's destruction of documents limited to the PFDA and SPA— he testified that he destroyed approximately 20 boxes of materials over a course of years beginning no earlier than 2019. *Id*. 185:3-24; 188:22-189:12. Finally, the destruction was strategic: Plaintiff testified that before destroying certain files, he went through them and made an effort to "hold onto as much as [he] thought would be needed." *Id*. 201:9-14. For example, Plaintiff retained during this process documents that he uses to support his claim for damages. He also waited until March, 2023—nearly the end of fact discovery—to disclose that he destroyed responsive documents, and then only after Defendants had moved to compel their production. Dkt. 107-2 ¶ 6. Now, one day after Defendants sent Plaintiff their portion of this letter-brief—and nearly a week after the close of fact discovery—Plaintiff claims to have located the PFDA and says it is contained within 15,000 pages of additional documents produced only yesterday. But even assuming a copy of the PFDA is in Plaintiff's production and is authentic, Plaintiff has not produced the SPA—and *both* agreements are necessary to demonstrate the validity of Plaintiff's supposed revocation.

Plaintiff's explanations for the document destruction strain credulity. He first asserted that the PFDA and SPA were destroyed under Ireland's Data Protection Act of 2018 ("DPA"), but even if

---

[3] In ordering Plaintiff to produce documents of Maron Pictures, the Court agreed that such documents are in Plaintiff's control. *See, e.g.*, No. 4:20-cv-1525, Dkt. 118.

[4] Plaintiff's response to these discovery requests neither stated nor implied that he would destroy documents. *See* No. 4:20-cv-1534, Dkt. 105 at 6-7.

the DPA applies in these circumstances—which is far from clear, given that the DPA governs the "processing" of personal data—it carves out the processing of data "necessary for the purposes of establishing, exercising or defending legal rights." *See* https://www.irishstatutebook.ie/eli/2018/act/7/section/47/enacted/en/html. Plaintiff also testified that the only personal data at issue in these documents was his own. Ex. A at 182:8-16. As to Plaintiff's testimony that he destroyed the PFDA and SPA because they were too costly to retain, this assertion equally lacks credibility, given that only two documents were at issue; the "costs" were incurred because he chose to store documents at his accountant's office; and the costs were not high—annually comprising between a few hundred pounds to, at most, 1500 Euros. *Id*. 187:8-188:18. And because those two documents are referenced in the Assignment Agreements that Plaintiff attached to his FAC, Plaintiff cannot reasonably have believed such documents were not potentially relevant, *see, e.g.*, No. 4:20-cv-01525, Dkt. 16-3 at 7-8, 21-22.

Third, the PFDA and SPA go to the heart of Plaintiff's prima facie case and Defendant's key defenses, because they bear directly on whether Plaintiff was entitled to revoke the grant of rights to Maron Pictures. "[T]he law presumes that spoliated evidence goes to the merits of the case and was adverse to the party that destroyed it." *Clear-View*, 2015 WL 2251005, *8. Given Plaintiff's destruction of these documents, they presumably were adverse to Plaintiff. *See id*.

**Defendants' Proposal**: Defendants respectfully submit that this Court should recommend the strictest sanction of dismissal.[5] *Herson*, 2011 WL 3516162, *4. Dismissal is available "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958. In deciding whether to impose this sanction, courts generally consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. A finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Id*.

Here, Plaintiff's spoliation of the PFDA and SPA was willful because Plaintiff knew years prior to their destruction that he had a duty to preserve these documents, then destroyed them under flimsy pretexts. *See id*. (affirming terminating sanctions where party deleted files). Plaintiff was selective in his destruction, as he retained documents that he believed supported his case. Plaintiff also declined to inform Defendants that he had destroyed these documents until the end of fact discovery, and then only in response to Defendants' motion to compel production of those documents. *See DR Distribs v. 21 Cent. Smoking,* 513 F. Supp. 3d 839, 906, 927 (N.D. Ill. 2021) (when counsel discovers possible spoliation, it must notify the other side immediately). Defendants are highly prejudiced by Plaintiff's spoliation because it prevents them from testing the validity of Plaintiff's alleged revocation of the transfer of the copyrights in the Film. *See Clear-View*, 2015 WL 2251005, *8 (prejudice "high" where party "cannot access potentially critical evidence to support[] its claims and defenses"). Plaintiff's actions have therefore *prevented* this case from being decided on the merits. Less drastic-sanctions will not adequately redress the prejudice to Defendants, because Defendants have been deprived of a primary defense in this action: that they were properly licensed to offer the film, because Plaintiff's revocation was invalid. *See*

---

[5] As to dispositive matters, a magistrate judge may issue a report and recommendation to the district court. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015).

3

*Roadrunner Transp. Servs. v. Tarwater,* 642 F. App'x 759, 759 & n.1 (9th Cir. 2016) (affirming default judgment sanction where defendant deleted emails and less drastic sanction did not adequately redress the resulting prejudice).[6]

In the alternative, the Court should impose an adverse inference that the PFDA and SPA be deemed to support Defendants' contention that Plaintiff's revocation was invalid because, pursuant to the terms of the PFDA and SPD, the consideration provided for in the Assignment Agreements never came due. *See Herson*, 2011 WL 3516162, *4 ("court may instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence"); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (simple notice of "potential relevance to the litigation"—not a showing of bad faith—required for adverse inference instruction).

**Plaintiff's Position and Proposal:** In yet another attempt at bending objective truth, Defendants continue to misrepresent facts and continue to act oppressively, as they try to prejudice, oppress and harass Plaintiff further. Since, mid-March 2023, Defendants have been on a relentless campaign of harassment against Plaintiff, and this is yet another example of it.

Plaintiff received an email on April 20th requesting a third meet and confer in relation to the PFDA and SPA, although the matters were already before the Court. Defendants have swamped Plaintiff with disputes after he had given undertakings to try and resolve their issues. However, the earliest that he could make himself available was ten days, as per this Court's Discovery Order (Dkt. No. 98-1 at 3: 3), which was April 30, 2023. Accordingly, on April 24, 2023, Plaintiff stated that he would be available on this date. *See* Ex D at 2. However, on April 26, 2023, the Court issued the motion to compel, which effectively addressed the issue. *See* Dkt. No. 118. Since, Plaintiff had agreed to make himself available prior to the Court's order, which had in effect addressed matters, Plaintiff did not see any reason to do the meet and confer.

More importantly, since the Court issued its motion to compel, Plaintiff has provided Supplemental Objections and Responses to both Apple and Google on May 5, 2023 confirming that they have received *all* documents, and provided in total over sixteen thousand and five hundred pages of documents to each party. Plaintiff has also fortunately located a copy and provided the PFDA (Ex. E at 13, 19), and although he has not located the SPA as of *yet*, he has given an undertaking to provide it to Defendants if he does, as his accountants are still searching for it. Moreover, although Fact Discovery Cutoff finished on April 28, 2023, Plaintiff also undertakes that he will provide it to Defendants if he or his accountants locate it even in the coming weeks, as he respectfully submits that this will only further enhance Plaintiff's claims anyway.

Plaintiff also strongly and completely reject Defendants argument, as yet another veiled attempt to tarnish Plaintiff, after what he needlessly has had to endure at their hands for the last 13 years. Plaintiff has also repeatedly explained to Defendants that his company, Maron Pictures Limited,

---

[6] As for the Court's need to manage its docket, this, too, weighs in favor of terminating sanctions, as Plaintiff has repeatedly engaged in vexatious tactics across his myriad litigations in this Court. *E.g.*, No. 4:21-cv-0856, Dkt. 70 at 4-5 (sanctioning Plaintiff "based on plaintiff's violation of this Court's order on briefing"; noting that "additional sanctions may be imposed ***if plaintiff does not follow the Court's orders in this and related actions going forward"*** (emphasis added)).

t/a Maron Pictures LLC and Maron Pictures ("Maron Pictures") has been effectively in a state of winddown since a fraud was perpetrated against it and against Plaintiff in 2016. Moreover, around this time, Plaintiff also informed Mr. Richard Charnley representing Mainsail LLC. outside Santa Monica Courthouse that he had revoked his own agreements with Maron Pictures the previous year, and subsequently, put it in writing to him too. *See* Ex. F at 2.

Although, Plaintiff could have pursued infringement proceedings against Apple and Google then directly in Ireland, he was advised that if a wrong has been knowingly committed, then Plaintiff had a moral obligation to try to correct it, which Plaintiff did. At great expense to Plaintiff personally, Maron Pictures appealed the State Court ruling and also took it to the Supreme Court of California, which upheld the State Court ruling. Plaintiff also sincerely believed at this time that Appeal Court would see through the wrong, although the Appeal Court did acknowledge that there was *no evidence of non-delivery*.

Plaintiff also very clearly explained to Defendants that in effect Maron Pictures has been slowly winding down, as it was never paid one cent for the use of Plaintiff's Film. However, due to cost burdens placed on it for the storage of materials, which it was no longer under any obligation to hold under Irish Law and due to the company not being in a position to maintain such costs either, materials no longer required have been *gradually* disposed of in accordance with the Companies Act 2014, Data Protection Act 2018 and General Data Protection Regulation ("GDPR"), as there are legal requirements in place in the *Republic of Ireland* in relation to documents no longer required. *See also* Declaration and Supplemental Declaration of Sheridan Mahon. Ex. G; Ex. H. While Defendants may scoff at a charge of a few hundred Euro to 1,500 Euro, they arrogantly forget that their wilful actions have left Plaintiff practically destitute, as he tried to get an egregious wrong corrected. Moreover, Defendants make reference to the DPA but also *concede* that it is "far from clear." However, the DPA is not to be taken in isolation, as in Plaintiff's case it also works in conjunction with the Companies Act 2014 and with GDPR, which are European Law requirements. Ireland is also obliged to adhere to GDPR since 2018, as a member of the European Union. Moreover, Maron Pictures, or any other entity is not a participant in this legal dispute, and nowhere does it state in Irish Law or under the DPA that voided documents are required to be kept nearly a decade after they were *voided* for a legal claim. Once an agreement is voided, it effectively has no legal effect. *See* Ex. I, attached hereto.

Plaintiff then only subsequently found out in or around, December 16, 2019 that his Film masters had been illegally copied in California anyway, without his knowledge or consent. Accordingly, he issued proceedings against Defendants.

While Defendants also try to twist the present situation on Plaintiff, as a matter of fact, it is Defendants who are to be blamed for this, as when Apple were served Plaintiff's Objections and Responses to Defendants First Set of Requests for Production back on October 1, 2021 (Ex. J), if they had raised a dispute with Plaintiff in a *timely* manner or with the Court, they would have received the PFDA and SPA then. However, when no dispute was raised by Defendants at that time, Plaintiff sincerely believed that they were not needed and he inadvertently allowed them to be disposed, as was legally scheduled in accordance with Irish and European Law. For Defendants to then raise a dispute a year and half later and to say that Plaintiff intentionally did this, is disingenuous at best. However, Plaintiff has now fortunately located a copy of the PFDA (Ex. E),

which Defendants have also been provided. Furthermore, Plaintiff has retained everything he has since the Court issued its Evidence Preservation Order. *See* Dkt. No. 98-1 at 2.

Moreover, (1) Maron Pictures is not a party to this litigation, and Maron Pictures *did* fulfil its retention requirement obligations under Irish and European Law. Moreover, this lawsuit was issued by Plaintiff in his personal capacity; (2) the destruction or loss of voided agreements was inadvertently made, as the voided PFDA clearly enhances Plaintiff's case, as Defendants can now see. Plaintiff also submits that if he locates the SPA, so will this; and (3) the PFDA and SPA are not relevant to the current matter before the Court, but as already stated, the PFDA only assists Plaintiff claims. *Clear-View Techs. v. Rasnick*, 2015 WL 2251005, *7 (N.D. Cal. May 13, 2015).

**Plaintiff's Proposal:** The Court should deny Defendants request for Sanctions. Even though the Fact Discovery Cutoff finished on April 28, 2023, Plaintiff undertakes to the Court that he will provide the SPA to Defendants if he or his accountant locates it in the coming weeks, as he respectfully submits that this will only further enhance Plaintiff's claims anyway.