**MAYER BROWN LLP**
A. JOHN P. MANCINI (*pro hac vice*)
jmancini@mayerbrown.com
GREGORY J. APGAR (*pro hac vice*)
gapgar@mayerbrown.com
SARA A. SLAVIN (*pro hac vice*)
sslavin@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500

GRAHAM (GRAY) BUCCIGROSS (SBN 234558)
gbuccigross@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000

*Attorneys for Defendants Google LLC
and its wholly owned subsidiary YouTube, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARK MAHON,<br><br>  Plaintiff,<br><br>  v.<br><br>YOUTUBE, LLC, et al.,<br><br>  Defendants. | Case No. 4:20-cv-01525-YGR<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**Judge**: Hon. Yvonne Gonzalez Rogers |

Pursuant to the Court's Order Requesting Further Briefing (Dkt. 186), Google respectfully submits this supplemental brief addressing the Court's two questions. As demonstrated below, Mahon does not have standing to sue as the beneficial owner of the *Strength & Honour* ("*S&H*") film copyright, and he cannot rely on the advice of counsel to avoid the application of equitable estoppel. Accordingly, the Court should enter summary judgment in favor of Google.

## I. MAHON IS NOT THE BENEFICIAL OWNER OF THE *S&H* COPYRIGHT

Google's Motion ("Mot.," Dkt. 147) explains that Mahon does not own a valid registration in the film copyright to *S&H* as a result of his fraud on the U.S. Copyright Office. *See* Mot. at 30-32. He also lacks standing to sue as the beneficial owner of that copyright.

Under the Copyright Act, the "legal or beneficial owner of an exclusive right" has standing to sue "for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The Ninth Circuit has held that a "beneficial owner" under § 501(b) is "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Warren v. Fox Family*, 328 F.3d 1136, 1144 (9th Cir. 2003); *see Ray Charles v. Robinson*, 795 F.3d 1109, 1115 n.6 (9th Cir. 2015) (same). The Ninth Circuit has strictly construed that holding to mean that a beneficial owner is "*only* an individual who had legal title and parted with it in exchange for royalties." *Minden Pictures v. John Wiley & Sons*, 10 F. Supp. 3d 1117, 1130 (N.D. Cal. 2014); *Premier Tracks v. Fox Broad.*, 2012 U.S. Dist. LEXIS 189754, at *19 (C.D. Cal. Dec. 18, 2012) ("a beneficial owner can only be a former legal owner that assigned his exclusive rights to another in return for royalties"); *see also Fantasy v. Fogerty*, 654 F. Supp. 1129, 1131-32 (N.D. Cal. 1987) ("A beneficial owner has transferred his exclusive rights over the copyright's use in exchange for an economic interest in proceeds derived from that use.").

Under that standard, if Maron Pictures is the legal owner of the *S&H* film copyright, Mahon cannot be the beneficial owner of that copyright for two reasons: (1) he never held—and thus could not part with—legal title to the copyright; and (2) Maron Pictures, not Mahon, is entitled to collect royalties from it. On both points, *Roberts v. Gordy*, 359 F. Supp. 3d 1231 (S.D. Fla. 2019) is a particularly instructive application of the applicable "beneficial owner" test to an analogous fact pattern. There, the plaintiffs were, like Mahon, individuals alleging infringement of a copyrighted

work. *Id*. at 1233. The plaintiffs also owned and controlled companies (like Maron Pictures) that were authorized to enter agreements for the exploitation of the work, and were entitled to receive the resulting royalties. *See id.* at 1247-48. All such royalties were "paid initially" to the companies, which subsequently paid plaintiffs pursuant to a separate arrangement. *See id.* at 1250-51.

On summary judgment, the *Roberts* court addressed whether, assuming that the companies legally owned the copyright, the plaintiffs could nonetheless sue as beneficial owners. *See id.* at 1247. Applying the same beneficial owner standard as the Ninth Circuit, *see id.* at 1247-48, the court rejected the plaintiffs' argument that they were beneficial owners merely because they owned the companies that legally owned the copyright. *See id.* at 1249-50 ("[T]he *Hustlin'* copyright is owned by Plaintiffs' companies. Allowing Plaintiffs to call themselves 'owners' of the copyright when the copyright is company property would ignore the corporate distinction."). It also concluded that the plaintiffs were not entitled to royalties from the exploitation of the work, even though they indirectly received some of the proceeds, *id*. at 1250-51, because it was the *companies* that had the exclusive right to exploit the work, and to whom all royalties earned from such exploitation were "paid initially." *Id.* Finally, the court held that plaintiffs could not qualify as beneficial owners merely as "authors of the work who maintain a financial interest in, and continue to benefit from, the commercial use of the work." *Id*. at 1248.

Applying this authority, Mahon cannot show that he is a beneficial owner of the *S&H* film copyright. First, Mahon was never the legal owner of this copyright and thus cannot have "parted with it in exchange for royalties." *Minden*, 10 F. Supp. 3d at 1130; *see* Mot. at 4. On September 25, 2006, Mahon assigned his copyright to the screenplay (the "Property") to Maron Pictures under: (i) an "Agreement to Acquire Literary Material," (ii) an "Agreement to Acquire Authorship Rights," and (3) an "Agreement for Producer and Director Services." Dkt. 147-1, Google SSS 2. In these agreements, Mahon "exclusively" assigned to Maron Pictures "all motion picture rights . . . all television motion picture and other television rights . . . any and all ancillary rights, throughout the universe, in and to the Property and in and to the copyright thereof and all renewals and extensions of copyright" as of September 25, 2006. *Id.* SSS 3. Mahon specifically assigned Maron Pictures the "sole and exclusive rights" to "make, produce, adapt and copyright one or more motion picture

1  adaptations or versions . . . based in whole or in part on the Property." Dkt. 148, Apgar Decl. Ex. 2
2  ¶ 1; *see id.* Ex. 3 ¶ 1 (same); *id.* Ex. 4 ¶ 1 (same). It is undisputed that Mahon's "production
3  companies" then "ma[d]e and develop[ed] the film commercially." Dkt. 146-11, Mahon SSS 9.
4  Maron Pictures subsequently registered the *S&H* film copyright on August 6, 2009, listing Maron
5  Pictures (not Mahon) as "Author" and "Copyright Claimant." Dkt. 147-1, Google SSS 4-5. Title to
6  the *S&H* film copyright thus initially vested in Maron Pictures, not Mahon. *See Warren*, 328 F.3d
7  at 1144. As in *Roberts*, the Court should uphold the distinction between Mahon and Maron Pictures
8  in assessing beneficial ownership. *See* 359 F. Supp. 3d at 1249-50. Accordingly, Mahon could not
9  have "parted with legal title to the copyright in exchange for royalties." *Warren*, 328 F.3d at 1144.

10  Second, Mahon never had the right to receive royalties from the exploitation of *S&H*—only
11  Maron Pictures did. Again, as of September 25, 2006, Maron Pictures held the exclusive motion
12  picture rights to *S&H*. Maron Pictures then entered the SAA with Mainsail, which appoints
13  Mainsail as Maron Pictures' sales agent and authorizes Mainsail, as Maron Pictures' agent, to grant
14  licenses to distribute *S&H*. *See* Dkt. 152-1, Eigen Dec. Ex. 1 (SAA), Section 1.1. The SAA entitles
15  Mainsail to keep a percentage of the revenues from such licenses, and obligates it to pay the
16  remainder to Maron Pictures. *See id.*, Deal Term E. Mahon is not a party to the SAA, and the SAA
17  does not entitle him to any royalties from the exploitation of *S&H*—only Maron Pictures has the
18  right to authorize, and is entitled to royalties from, the exploitation of *S&H*. That is so even if
19  Mahon's September 25, 2006 assignment agreements obligated Maron Pictures to pay
20  consideration to Mahon as "royalties." *See, e.g.*, Dkt. 148-2, Apgar Decl. Ex. 2 ¶ 5. As in *Roberts*,
21  it is Maron Pictures that had the exclusive rights to the film, entered into the agreements authorizing
22  its commercial exploitation, and was to be paid royalties resulting from such exploitation. *See* 359
23  F. Supp 3d at 1250-51. Accordingly, a separate payment obligation from Maron Pictures to Mahon
24  does not make Mahon a beneficial owner of the copyright, *see id.*, particularly because no copyright
25  in the *S&H* film existed when Mahon and Maron Pictures entered their assignment agreements.
26  Whatever "royalty" rights Mahon may have received in those agreements, he could not have
27  obtained them "in exchange for" legal title to the film copyright. *Warren*, 328 F.3d at 1144.
28  Of course, Mahon argues that he "revoked" his rights from Maron Pictures on October 1,

2015. Even assuming Mahon *did* so (and leaving aside that Mahon is judicially estopped from making this argument, *see* Mot. at 10-13), that would not change the analysis. The SAA's 15-year term does not expire until at least April 2024. *See* Dkt. 152-1 at 3 (SAA, Deal Term C). Mahon's alleged "revocation" of rights is insufficient to formally terminate the SAA, which requires the parties to follow a notice and cure procedure before termination is possible. *See id.* at 11 (SAA, § 18.1). Mahon does not claim that Maron Pictures followed that procedure, or provided any notice of termination to sub-licensees eOne or Google. Mahon's alleged "revocation" therefore does not affect or modify the rights Maron Pictures granted to Mainsail in the SAA. And if Mahon did revoke his assignment agreements with Maron Pictures on October 1, 2015, Mahon could not be a beneficial owner after that date because, by then, he would not have been a party to any agreement entitling him to any royalties at all.

Moreover, even if Mahon *was* the beneficial owner of the *S&H* film copyright, and even if his "revocation" of rights was valid and led to a termination of the SAA, Google's sub-license to *S&H* remains in place, thereby preventing a copyright infringement claim and entitling Google to summary judgment. Again, the SAA expressly provides that upon termination, Maron Pictures "***shall respect any third party licenses that have already been entered into***," *id.* § 18.1 (emphasis added), and further provides that "**[*n*]*o termination will affect Sales Agent's rights with respect to agreements entered into prior to such termination*,**" *id.* § 18.3 (emphasis added). Accordingly, pre-existing downstream licenses, including Google's licenses from eOne, *see* Dkt. 147-1, Google SSS 18-26, remain in place, as those agreements survive any alleged termination of the SAA.

Finally, Mahon's written emails authorizing Mainsail to grant eOne distribution rights in Ireland indisputably expanded the SAA's territorial scope to include Ireland. *See* Dkt. 147-1, Google SSS 10-14. Although the SAA provides that it cannot be modified "orally," *see* Dkt. 152-1 at 11 (SAA, § 19.3), Mahon's emails clearly qualify as a writing, and they were "accepted by a duly authorized agent or officer" of Maron Pictures, such that they satisfy the SAA's modification provision, *see id*. Mahon's emails, which expressly recite "Ireland" and "Eire" (the Irish word for Ireland), plainly referred to the country of Ireland, and not Northern Ireland, as Mahon claims only now. Indeed, Mainsail did not need permission to distribute *S&H* in Northern Ireland, because this

4

1    was always included in the SAA's Territory. *See id.* at 2 (SAA, Deal Term B) (defining Territory
2    as "the entire world, excluding the North America [sic] and Ireland"). Accordingly, nothing in the
3    record corroborates Mahon's present-day testimony or suggests those emails meant anything other
4    than what they said.

## II. THE ADVICE OF COUNSEL DEFENSE DOES NOT IMPACT GOOGLE'S EQUITABLE ESTOPPEL ARGUMENT

Google argued that Mahon should be equitably estopped from asserting copyright claims where he sat on his rights for nearly a decade before notifying Google of the alleged infringement. Mot. at 22-24. At the February 16 hearing, for the first time, Mahon claimed that he delayed notifying Google of its alleged infringement and bringing suit against it only on the advice of his counsel. The Court should reject this untimely defense for the reasons set forth below.

Although the case law is sparse as to the specific application of the advice of counsel defense in the context of equitable estoppel, the application of this defense in other equitable contexts is instructive. Notably, courts which have considered the advice of counsel defense in the context of whether a plaintiff is entitled to equitable tolling of the statute of limitations have typically found that such a defense is insufficient to permit tolling where the plaintiff had knowledge of the factual basis for his claims. For example, in *Wolf v. Travolta*, the plaintiff sued her former business partner for copyright infringement where she claimed that he continued to use her copyrighted acting program after the dissolution of their partnership. The plaintiff brought suit many years after she learned of the alleged infringement and argued that her delay was in part due to her attorney advising her that "more evidence was needed before any legal action" and that plaintiff "should not file a frivolous lawsuit." 167 F. Supp. 3d 1077, 1085, 1095 n.9 (C.D. Cal. 2016). But given the plaintiff's clear knowledge of the alleged infringement, *id.* at 1085, the court rejected this argument as a basis to toll the statute of limitations, *see id.* at 1095 n.9.

Similarly, in *Fahmy v. Jay-Z*, the plaintiff sought to equitably toll the limitations period based on statements by *defendant's* attorneys. 835 F. Supp. 2d 783, 791 (C.D. Cal. 2011). But there, as in *Wolf*, the plaintiff's knowledge of the factual basis of the claim outweighed any potentially misleading statement by the defendant's attorneys because "[a]t the time [an attorney] allegedly

1  'misled' plaintiff, the plaintiff already knew that [defendant's song] allegedly infringed on [plaintiff's song] [which] alone defeats an argument for equitable tolling." *Id*. at 791. Moreover, the existence of another litigation did not toll the statutory period because prior judicial actions "do not toll the statute of limitations, no matter how close their relationship to the one at bar." *Id*. at 792 (internal citation omitted); *see also* Dkt. 49 (Order Re: Motions to Dismiss) at 9-10.

Courts have also rejected an advice of counsel defense based on a litigant's failure to timely disclose the defense or failure to adequately support the defense. For example, in *United States v. King Mountain Tobacco*, the defendant argued an advice of counsel defense to avoid payment of penalties for failure to pay an excise tax. 2014 WL 4264803, at *5 (E.D. Wash. Aug. 28, 2014), *aff'd*, 899 F.3d 954 (9th Cir. 2018). The court rejected this defense because the defendant failed to plead it as a defense in its answer or later disclose it, thereby prejudicing the United States, *id*., and because the defendant failed to produce sufficient evidence showing that its attorneys actually advised it that it could, or should, not pay the relevant tax, *id*. at *6. Similarly, in *Columbia Pictures v. Krypton Broadcasting*, one of the defendants sought to rely on advice of counsel to show that his infringement was not willful. 259 F.3d 1186, 1196 (9th Cir. 2001). The court precluded evidence of this defense because the defendant refused to engage in discovery or answer questions on relevant communications with counsel until the "eleventh hour." *Id.*

These principles equally apply here. Mahon was undisputedly aware of the "factual basis" for his claim in "probably 2010," Google SSS 31, and actively preparing and gathering evidence to litigate against Google in 2015 and 2016, *id*. 32, 35, 36. *See* Mot. at 22-23; Plaintiff's SSS 33 ("Undisputed" Mahon was aware *S&H* was available on YouTube in 2015). Mahon's knowledge of Google's infringement precludes him from arguing that he delayed notifying Google of the alleged infringement during the then-pending state court litigation based on the advice of counsel. *See Wolf*, 167 F. Supp. 3d at 1085, 1095 n.9; *Fahmy*, 835 F. Supp. 2d at 791, 792.

Moreover, nothing in the record supports Mahon's advice of counsel defense. *See King Mountain Tobacco*, 2014 WL 4264803, at *6. In fact, Mahon asserted advice of counsel as a defense to Google's equitable estoppel argument for the first time at the February 16 hearing, vaguely arguing that "the lawyer who was dealing with the [Mainsail litigation] told [him] that

1  nothing could be done because there was a procedure and we were to follow the procedure."
2  Hearing Tr. at 63:8-14.[1] But Mahon has never identified this lawyer. Nor did Mahon raise this
3  defense in any discovery responses or briefing, up to and including his MSJ (Dkt. 146) and his
4  Opposition to Google's Motion (Dkt. 166). To the contrary: Mahon conceded that he could have,
5  but did not, bring any action against Google because he was engaged in litigation against Mainsail.
6  Dkt. 166 at 12-13; *see* Mahon SSS 33 ("Plaintiff was pursuing litigation [against Mainsail] thru
7  [sic] Maron Pictures"); *id.* 36 ("Plaintiff did not believe he would have to sue Google" in 2016
8  when he purchased *S&H* from YouTube in preparation for future litigation against Google); *see*
9  *also* Dkt. 176 at 8, 18 n.22. Accordingly, the record contradicts Mahon's current position.

10  Finally, permitting Mahon to advance this defense would unfairly prejudice Google,
11  because Mahon invoked it only at the "eleventh hour"—well after the close of fact discovery and
12  summary judgment briefing. *See Columbia Pictures*, 259 F.3d at 1196; *King Mountain Tobacco*,
13  2014 WL 4264803, at *5. Indeed, where a party raises an advice of counsel argument, the opposing
14  party is entitled to discovery of the supporting evidence—including any potentially privileged
15  communications between Mahon and the (unidentified) solicitor he claims advised him not to bring
16  an infringement action against Google. *See Columbia Pictures*, 259 F.3d at 1196. Here, Google has
17  had no opportunity to engage in discovery or evaluate the evidence supporting Mahon's belatedly-
18  raised argument. For this reason, too, the Court should reject Mahon's advice of counsel defense.[2]

19  For the foregoing reasons, as well as those set forth in its Motion, Google respectfully
20  requests that the Court enter summary judgment in favor of Google.

---

[1] Notably, Mahon *did* argue that he received advice of counsel in opposition to Google's fraud on the Copyright Office argument. *See* Dkt. 166 at 12, 27. If anything, this makes Mahon's failure to raise advice of counsel in connection with equitable estoppel even more glaring.

[2] At minimum, if the Court is inclined to entertain Mahon's defense, Google should be allowed discovery into: (1) the precise nature of the legal advice that Mahon received, including whether he was advised not to notify Google of the alleged infringement or not to bring an infringement suit against Google; (2) whether that advice was competent; and (3) whether Mahon reasonably relied on it. *See adidas America v. Payless Showsource*, 529 F. Supp. 2d 1215, 1230 (D. Or. 2007) (listing factors). In particular, Mahon's claim that his counsel instructed him that he could not *notify* Google of the alleged infringement during the *Mainsail* litigation strains credulity.

| | | |
|---|---|---|
| 1 | DATED: March 1, 2024 | Respectfully submitted, |

By: */s/ A. John P. Mancini*
**MAYER BROWN LLP**
A. JOHN P. MANCINI (*pro hac vice*)
jmancini@mayerbrown.com
GREGORY J. APGAR (*pro hac vice*)
gapgar@mayerbrown.com
SARA A. SLAVIN (*pro hac vice*)
sslavin@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500

GRAHAM (GRAY) BUCCIGROSS (234558)
gbuccigross@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone: (650) 331-2000

*Attorneys for Defendants Google LLC and YouTube, LLC*