1  Mark Mahon
2  movieman1000@live.com
   Mariners Rest,
3  Mariners View Avenue,
   Passage West,
4  Cork,
   Ireland
5  Telephone: 353 87 742 4444

6  *Plaintiff Pro Se*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MAHON, AN INDIVIDUAL,<br><br>        Plaintiff,<br><br>    v.<br><br>MAINSAIL LLC., ET AL.,<br><br>        Defendants. | CASE NO. 4:20-cv-01523-YGR<br><br>**PLAINTIFF'S FURTHER BRIEFING IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**DECLARATION OF OLANN KELLEHER** |
| MARK MAHON, AN INDIVIDUAL,<br><br>        Plaintiff,<br><br>    v.<br><br>YOUTUBE LLC., ET AL.,<br><br>        Defendants. | CASE NO. 4:20-cv-01525-YGR<br><br>**PLAINTIFF'S FURTHER BRIEFING IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**DECLARATION OF OLANN KELLEHER** |
| MARK MAHON, AN INDIVIDUAL,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE, INC., ET AL.,<br><br>        Defendants. | CASE NO. 4:20-cv-01534-YGR<br><br>**PLAINTIFF'S FURTHER BRIEFING IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**DECLARATION OF OLANN KELLEHER**<br><br>JUDGE: HON. YVONNE GONZALEZ ROGERS |

Plaintiff Mark Mahon ("Plaintiff") respectfully submits this further briefing pursuant to the Court's February 21, 2024 Order Requesting Further Briefing in case nos. 4:20-cv-01523-YGR[1] (Dkt. No. 141); 4:20-cv-01525-YGR[2] (Dkt. No. 186) and 4:20-cv-01534-YGR[3] (Dkt. No. 173); Declaration of Olann Kelleher ("Decl.Kelleher") attached hereto; and upon the papers, records, exhibits and pleadings on file herein.

### 1. Plaintiff can Sue for Copyright Infringement as the Beneficial Owner

This matter concerns 3 copyrights: TXu1-289-556 (Dkt. No. 16-2 at 31); PA 1-642-297 (Dkt. No. 34-4); and PA 1-398-376. Dkt. No. 16-2 at 4. However, Mainsail, Google and Apple's (collectively, "Defendants") position taken in relation to an inadvertent error[4] by Plaintiff over PA 1-398-376 still does not alter the outcome, or Plaintiff's legal standing to sue. Yet, assuming *arguendo*, Maron Pictures Limited, t/a Maron Pictures LLC and Maron Pictures ("Maron Pictures") owns the copyright for his *Irish*, award-winning, *Strength and Honour* (the "Film"), Plaintiff can still sue as he is the sole, one hundred percent owner and beneficial owner of Maron Pictures (Dkt. No. 166-3) and of the copyright. "To be entitled to sue for copyright infringement, the plaintiff must be the "legal or beneficial owner of an exclusive right under a copyright." *See* 4 *Business and Commercial Litigation in Federal Courts,* at 1062, § 65.3(a)(4) (Robert L. Haig ed.)" *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005).

Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C. § 501(b),

---

[1] Case no. 4:20-cv-01523-YGR names defendants Mainsail LLC.; Shoreline Entertainment, Inc.; Sam Eigen; Morris Ruskin (collectively, referred herein as "Mainsail".)

[2] Case no. 4:20-cv-01525-YGR names defendants YouTube LLC and Google LLC. (collectively, referred herein as "Google".)

[3] Case no. 4:20-cv-01534-YGR names defendants Apple Inc.; Apple Inc. D/B/A iTunes; Apple Inc. D/B/A iTunes Store (collectively, referred herein as "Apple".)

[4] Plaintiff strongly disputes he did anything wrong knowingly by seeking to have *correct* facts *amplified* on his copyright. Maron Pictures' appeal was dismissed 04-19-2017 (Dkt. No. 166-17), so he sought *legal advice* and was advised an appeal only checks if the lower court made legal errors, and informed the case *was* finished. Dkt. No. 166-37 at 2, ¶7. Thus, Plaintiff concluded his issues regarding Maron Pictures, as a separate legal entity, were finished. Plaintiff did not know *at that time* that getting the Maron Pictures appeal reinstated would then alter that legal advice given. In addition, "§ 411(b) does not distinguish between a mistake of law and mistake of fact. *Lack of knowledge of either fact or law* can excuse an inaccuracy in a copyright registration." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 945 (2022). (emphasis added)

which provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). *Moran v. London Records, Ltd.*, 642 F. Supp. 1023, 1024 (N.D. Ill. 1986). This reflects a concept of beneficial ownership consistent with that which courts developed under the 1909 Copyright Act. Applying that Act, courts invoked common law trust principles to hold that when a copyright owner assigned title in exchange for the right to receive royalties from the copyright's exploitation, a fiduciary relationship arose between the parties, and the assignor became a "beneficial owner" of the copyright with standing to sue infringers should the assignee fail to do so. 3 M. Nimmer, *Nimmer on Copyright* § 12.02 (1985).

A "beneficial owner of the rights" is defined as including "an author who ha[s] parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984), *quoting* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S. Code Cong. Ad. News 5659, 5775. *See also Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057 (C.D. Cal. 2001) (holding same.) "A beneficial owner may bring an infringement action to protect his economic interest in the copyright from being diluted by a wrongdoer's infringement. 17 U.S.C. § 17 U.S.C. § 501(b);" *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987) quoting *Cortner,* 732 F.2d at 271.

Thus, assuming *arguendo*, Maron Pictures owns the copyright, Plaintiff is the "beneficial owner of the rights" as he parted with legal title to his copyright of specific rights to Maron Pictures in exchange for payment and percentage royalties based on sales or license fees for the screenplay in the amount of 40% (Dkt. No. 166-30 at 8); Authorship royalties of 50% (Dkt. No. 166-31 at 6) and Producer/Director royalties of 10%. *See* Dkt. No. 148-4 at 6.

A beneficial owner has standing to bring an infringement suit to protect his economic interest in the copyright. 17 U.S.C. § 501(b); *Kamakazi Corp. v. Robbins Music Corp.*, 534 F. Supp. 69, 73-74 (S.D.N.Y. 1982). "Beneficial ownership arises by virtue of section 501(b) for the purpose of enabling an author or composer to protect his economic interest in a copyright that has been transferred." *See Broad. Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997). Thus, Plaintiff can sue for copyright infringement as the beneficial owner of Maron Pictures' copyright.

### *2. The Mainsail/Maron Pictures Agreement is Not Valid*

Defendants endeavor to rely on an invalid Mainsail/Maron Pictures agreement ("SAA") after Mainsail previously argued in the state court case that Maron Pictures never delivered the Film to them; had *no* rights due to the SAA being unenforceable, and it was *not* implied. Thus, Plaintiff respectfully submits that the SAA has *no legal standing* before this Court and is an invalid instrument, as: 1. this agreement was not signed by Mark Mahon acting in a *personal* capacity[5], or as an individual; 2. this SAA did *not* cover the jurisdictions of *North America* and *Ireland*, which Mainsail admitted (Dkt. No. 146-35 at 2, ¶ 6); 3. Mainsail were advised directly by Plaintiff's Irish lawyer at the time, Olann Kelleher, on October 13, 2009 that the SAA had been supplied and entered with an incorrect name in error and needed to be rectified, which it was not (Decl.Kelleher, ¶ 6); 4. in or around December 21, 2009, Mainsail were informed by Olann Kelleher that if Entertainment One et al. ("eOne") were not doing a theatrical release of the Film, which *eOne did not do*, then this was a breach of the terms agreed for the eOne deal so this deal was to be terminated. Mainsail were also warned to resolve the issue, since the SAA had not been amended to reflect Maron Pictures correct legal name, the eOne agreement by default, was legally invalid (Decl.Kelleher, ¶ 11); 5. The SAA did not assign any copying rights, or cover illegal pirate copies made without the copyright owner's knowledge or consent; and 6. the terms of the SAA[6] agreement were *only applicable* for the authorized, branded and *finished* version of the

---

[5] A legal entity is separate and apart from its individual members. *See PacLink Communications Internat, Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963; *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.

[6] Even in a hypothetical scenario that the SAA was a valid document, *which it is not*: 1. Mainsail could only license the branded Film supplied upon complete delivery; 2. this agreement could not be changed orally and no amendments, modifications, or assignments would be binding upon either party until accepted by both parties in writing, with fax signatures deemed as valid for the agreement and any amendments made thereafter; 3. it was *only* agreed to respect *legal* licenses put in place for the *authorized*, branded, award-winning *Irish* Film supplied (Dkt. No. 146-19), not a counterfeit version; 4. this agreement did *not* indemnify unlawful copying or distribution in North America, or *Republic of Ireland*; 5 this agreement did *not* indemnify illegal, cultural discrimination, misrepresentations, or fraudulent activity, or activities that would make Maron Pictures complicit in unlawful conduct, including but not limited to violations of Michael Madsen and Plaintiff's agreements; rights; or the Film's legal screen and advertising restrictions; and 6. the SAA did *not* indemnify fourth party licenses, such as with Apple and Google.

1  Film that was supplied to Mainsail (Dkt. Nos. 146-19; 146-36 at 2), and which was *not* released.

2  Moreover, after smearing Plaintiff and his branded, *Irish*, award-winning Film with DARVO (Deny, Attack, and Reverse Victim and Offender) tactics, Mainsail then insists its case involves matters occurring or discovered "on or after March 2, 2017". Thus, Plaintiff respectfully submits Mainsail should not be permitted to alter its position taken in the state court case in 2016 or positions concealed then against a separate legal entity[7], Maron Pictures, *including* their position taken that Mainsail[8] did "cease and desist" as *per* the January 30, 2010 email.

### 3. A Party following Advice from Counsel to Not Act while Litigation in Another Court Was Ongoing is Excusable and Does Impact a Court's Equitable Estoppel Analysis

The "applicability of equitable estoppel is 'committed to the sound discretion of the trial judge.'" *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 96 F. Supp. 3d 1028, 1040 (C.D. Cal. 2015). As the Supreme Court has repeatedly emphasized, a finding of estoppel requires some act or representation by the party to be estopped, on which the party seeking estoppel has relied to its detriment: "[t]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing." *Abers v. Rohrs*, 217 Cal.App.4th 1199, 1209 (Cal. Ct. App. 2013) (citing *Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725, 125 Cal.Rptr. 896, 543 P.2d 264.)

To establish equitable estoppel as a defense to a copyright infringement action, the defendant *must prove* four conjunctive elements: "(1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its

---

[7] Accordingly, Plaintiff objects to Mainsail's Exhibits B; C; J; N; O; P; Z; DD; EE; GG; JJ; KK; MM; VV; AAA; BBB; CCC; DDD; EEE; FFF; GGG; HHH; III; JJJ; KKK; MMM; NNN; OOO; RRR; SSS; TTT and WWW on the grounds of relevance. Mainsail declared positions in a state court case against Maron Pictures in 2016, which they *now own*. Maron Pictures appealed and sought review by the Supreme Court, which was denied in 2019 based on same. Dkt. No. 41 at 3.

[8] While Plaintiff did go into the history of matters before the Court, this was done to provide an accurate history of events, in order to give this Court a clearer understanding of matters. This also demonstrates how Defendants destroyed the financial value of Plaintiff's branded, award-winning, *Irish* Film globally; vaporized Plaintiff's good name in *Ireland* over its deceptive "Brit flick" marketing, and stole 14 years of Plaintiff's life trying to conceal their misdeeds.

injury." *Tech 7 Systems, Inc. v. Vacation Acquisition, LLC*, 594 F. Supp. 2d 76, 86-87 (D.D.C. 2009) (citing Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003)). *See also* 4 Nimmer On Copyright § 13.07 [A].

Plaintiff indisputably did not do any act or make any representations to Apple or Google, *nor* can Apple or Google state before this Court without misleading it that they relied on Plaintiff, as Plaintiff *never* had *any* dealings with Apple or Google in relation to his Film before December 12, 2019. Moreover, "a failure to demonstrate the element of intent precludes summary judgment on the estoppel defense." *Tech 7 Systems, Inc.*, 594 F. Supp. 2d at 86.

However, while Plaintiff was aware that a counterfeit version of his Film was released directly in the *Republic of Ireland* without his consent since January, 2010; he did take *immediate* action and the legal advice he was given was that he would need to engage a lawyer in the United States to pursue matters, which his company instantly did. *See* Decl.Kelleher, ¶ 13. Despite this, Plaintiff still demanded the counterfeit versions be removed from commercial exploitation, which Mainsail and eOne did *not* do. *See* Decl.Kelleher, ¶¶ 14 – 16. Moreover, after Maron Pictures engaged a lawyer in California, it still wanted the counterfeit covers and trailer removed and again, was instructed there were legal procedures that had to be followed, which Plaintiff did through Maron Pictures and relied upon. While Plaintiff did revoke all his rights from Maron Pictures on October 1, 2015, Plaintiff was again instructed to wait on the determination of Maron Pictures' legal dispute, which Plaintiff did wait to conclude based on the legal advice he trusted in and relied upon, and did *not* issue *personal* litigation, as a consequence of this reliance; despite the heavy personal and financial costs to Plaintiff, his family and reputation over this "Brit flick" in the *Republic of Ireland*. However, it was only after December 12, 2019 Plaintiff discovered his Film has been copied and distributed in California without his knowledge or consent, and after that issued his litigation as the determination of the Maron Pictures' appeal had also concluded. Moreover, the Apple and Google actions are ground upon infringements in 2019. *Hampton v. Paramount Pictures Corporation*, 279 F.2d 100, 105 (9th Cir. 1960) Additionally, Plaintiff *only* discovered that his Film and his Film's metadata had been copied, reproduced, performed, distributed, etc. without his knowledge or consent in California and the United States by Apple

1  and Google in 2023. *See* Apple, Dkt. No. 152-4 at 13; Google, Dkt. No. 168-4 at 14.

2  Plaintiff also humbly submits to this Court that there is *no* evidence that Plaintiff –
3  whether by his representation, omissions, or conduct – <u>intended</u> for Apple or Google to rely upon
4  Plaintiff's representations, omissions, or conduct to its detriment. Further, because questions of
5  intent are ill-suited for summary judgment, *see United States v. Philip Morris USA, Inc.*, 327 F.
6  Supp. 2d at 1 n.5 (D.D.C. 2004), Apple and Google bear the burden of proof, and Plaintiff is
7  entitled to all inferences in its favor, as the non-moving party to Apple and Google's estoppel
8  argument. Furthermore, the burden of proof in an estoppel defense rests squarely on the alleged
9  infringer. *Jamesbury Corp. v. Litton Indus. Products, Inc.*, 839 F.2d 1544, 1554 (Fed. Cir. 1988).
10 Moreover, "[w]here the moving party has the burden of proof on a defense, it must show on
11 summary judgment that the undisputed facts establish every element of that defense." *Meyers v.*
12 *Brooks Shoe Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990). Therefore, summary judgment is
13 inappropriate on the basis of estoppel.

14  ### A.  Apple and Google provide No Legal Basis for their Assertions

15  The defense of equitable estoppel is available in copyright infringement actions. *See*
16 *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 134 S. Ct. 1962, 1977, 188 L.Ed.2d 979
17 (2014). However, to *prevail*, an alleged infringer must establish that he/she "detrimentally relie[d]
18 on the copyright owner's deception." *Id* at 684. Accordingly, for Apple and Google to prevail they
19 *must prove* that they "detrimentally relied on the copyright owner's [Plaintiff] deception." *Id.*
20 Thus, Plaintiff submits to this Court that this is just *not* possible, as Plaintiff *never* had *any* direct
21 dealings about his Film with Apple or Google before December, 2019. *See* 4 Melville B. Nimmer
22 & David Nimmer, Nimmer on Copyright § 13.07[A] (Matthew Bender, rev. ed. 2012). "The
23 defense of estoppel is clearly available, if the plaintiff has ... induced or caused the defendant to
24 perform [the acts of alleged infringement]." 4 Nimmer on Copyright § 13.07[A]. The "gravamen"
25 of an estoppel defense "is misleading and consequent loss." *Petrella*, 134 S. Ct. at 1977.

26  Defendants also rely on a forged declaration that Plaintiff was *never* provided, was made
27 without Plaintiff's authority, *never* authorized or saw before April 10, 2020 (Mainsail, Dkt. No.
28 26-1 at 2, ¶ 8), and which Mainsail initially filed in this Court. *See* Mainsail, Dkt. No. 25-15.

1   Accordingly, Plaintiff respectfully submits Defendants cannot rely[9] on this declaration either, as

2   "when a signature is forged, or made without authority of the person whose signature it purports

3   to be, it is wholly inoperative (Civ. Code, § 3104)." *Condor Corp. v. Cunningham*, 71 Cal.App.2d

4   25, 32-33 (Cal. Ct. App. 1945). Moreover, Apple and Google provide no legal basis for their

5   assertions that Plaintiff "long knew" of the infringements and did not police his copyrights.

6   Plaintiff indisputably did through Maron Pictures, as it pursued a state court case in California.

### B. Equity Should Record No Penalty for a Party Following Advice from Counsel

8   Plaintiff relied on and followed the advice from counsel engaged to not act while matters

9   in the state court and related legal issues in the appeal court were ongoing in the interest of

10  judicial efficiency and to avoid potential conflicts; in what Plaintiff always believed was a very

11  simple matter, *albeit* made more complex by Mainsail's concealments to avoid their own legal,

12  financial and moral obligations. Clearly, if Mainsail did "cease and desist" as *per* Maron Pictures

13  direct instructions on January 30, 2010 (Decl.Kelleher, ¶¶ 11-16), which they testified in state

14  court they did do in 2016, then none of the consequences for Plaintiff and others would have

15  transpired. "Delay in reliance on legal advice, awaiting determination of a legal issue in another

16  pending case, may be excusable." 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 15, p.

17  5241; *Mercury Ins. Co. v. Lara*, 35 Cal.App.5th 82, 110 (Cal. Ct. App. 2019); *Hill v. Hattrem*

18  (1981) 117 Cal.App.3d 569, 573-574, 172 Cal.Rptr. 806 (same); *Hopson v. Nat. Union etc.*

19  *Cooks, Stewards* (1953) 116 Cal.App.2d 320, 325-326 [253 P.2d 733]) (same). Thus, Plaintiff

20  submits it serves equity and fairness, which is fundamental to the administration of justice that a

21  party who follows legal advice from counsel and delays litigation in reliance of it, should *not* be

22  penalized for doing so in order that the principles of fairness are upheld.

### CONCLUSION

24  Plaintiff respectfully submits this Court should deny Defendants' Motions for Summary

25  Judgment and grant Plaintiff the relief he humbly seeks in his Motions for Summary Judgment.

---

[9] Mainsail were also made aware the contract they supplied to Maron Pictures was legally invalid (Dkt. No. 146-48 at 3), which was *never* corrected; and subsequently warned that their eOne agreement by default was too, but carried on with reckless disregard of the consequences. *See* Decl.Kelleher, ¶¶ 5-16.

Dated: March 1, 2024

Respectfully submitted,

By: /s/ Mark Mahon
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Telephone: 353 87 742 4444

*Plaintiff Pro Se*